**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jerald H. REYNOLDS, Defendant-Appellant.**

**No. 77–5739.**

United States Court of Appeals, Fifth Circuit.

May 18, 1978.

Jack Floyd, William D. Hudson, Gadsden, Ala., for defendant-appellant.

J. R. Brooks, U. S. Atty., Herbert H. Henry, Asst. U. S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before COWEN,* Senior Judge, GOLD-BERG and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Appellant Jerald H. Reynolds, a former vice-president of Alabama City Bank of Gadsden, Alabama, was convicted of viola-

* Senior Judge of the United States Court of Claims, sitting by designation.

tions of 18 U.S.C. §§ 656 [1] and 371,[2] pertaining to wilful misapplication of bank funds and conspiracy to do so. On appeal he contends that his conviction should be reversed because there was insufficient evidence of intent and wilfulness, under section 656; and insufficient evidence of a conspiracy under section 371. He further assigns as error prejudicial publicity. We affirm.

The evidence showed that Reynolds issued and signed as authorized officer, the bank's cashier's check for $28,290 to Robert E. Owens, a partner in a land investment scheme admittedly without obtaining payment for it, or security. There were three participants in the deal: Owens, a customer of the bank; Reynolds, vice president of the bank who issued the cashier's check, and H. Ray Cox, the bank's president. Rather than process the credit copy of the cashier's check through normal channels of the bank, Reynolds retained it on his desk for seventeen days, until the land was resold at a profit, at which time the bank was paid for the check. The effect of this procedure was that there was no bank record of the transaction. Furthermore, there was no written agreement between Reynolds, Cox, the bank president, and Owens, to whom the check had been issued; the deed to the property by which it was acquired was never recorded; and Reynolds and Cox advanced no money of their own, but only the bank's, toward the purchase of the land.

Reynolds stated that Cox, the bank's president, directed him to issue the cashier's check without payment, and that he expected payment would be made immediately from the proceeds of a loan by them at another bank.

Owens' version differed. He testified that he went to Reynolds at the bank where he and his wife executed a note for $28,290 and a second mortgage on the property. The cashier's check was then issued to him in that amount. After selling the property Owens then delivered the check representing the proceeds to Reynolds for distribution and payment, but he did not get back his note and mortgage. However, he saw Reynolds tearing something up, ostensibly the note and mortgage.

Reynolds testified, however, that he could find no record of Owens having borrowed the money from the bank. Further, Reynolds admitted that when the cashier's check was issued there was nothing in the record of the bank obligating anyone to pay the $28,290; and that the money given to Owens, used to purchase the property involved, was that of the Alabama City Bank.

"[R]eckless disregard of the interest of a bank is, for the purpose of 'willful misapplication,' the equivalent of intent to injure or defraud," within the meaning of

---

1. § 656. Theft, embezzlement, or misapplication by bank officer or employee

Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he shall be fined not more than $1,000 or imprisoned not more than one year, or both.

As used in this section, the term 'national bank' is synonymous with 'national banking association'; 'member bank' means and includes any national bank, state bank, or bank and trust company which has become a member of one of the Federal Reserve banks; and 'insured bank' includes any bank, banking association, trust company, savings bank, or other banking institution, the deposits of which are insured by the Federal Deposit Insurance Corporation.

2. § 371. Conspiracy to commit offense or to defraud United States

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. . . . .

18 U.S.C. § 656. *United States v. Wilson*, 5 Cir., 1974, 500 F.2d 715, 720. Such was the conduct of defendant Reynolds described above, and the jury was entitled to infer intent from these facts. *United States v. Prout*, 5 Cir., 1976, 526 F.2d 380, 384.

■ Furthermore, it is clear that Reynolds, Cox and Owens discussed the investment in the land on several occasions, and profited from the transaction to the extent of approximately $12,000 to each of the three participants. The jury was entitled to infer conspiratorial agreement between the bank's president and the appellant from the evidence presented. *Prout, supra*, 526 F.2d at 384–85. We are convinced from our review of the record that reasonable minds could have concluded that the evidence was inconsistent with a hypothesis of innocence. *Id.*

Finally, after polling the jury's verdict, in response to the court's question, sua sponte, three jurors disclosed that they had heard or read news accounts that Cox, the bank president, had previously pled guilty to charges similar to those here. Questioned by the trial judge, these jurors denied that the news accounts had influenced them, and the foreman stated that no mention was made of them in the jury room.

■ A claim of jury prejudice arising from news accounts must turn on its own facts. *Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). In this regard the trial judge correctly followed the procedures approved in *Gordon v. United States*, 5 Cir., 1971, 438 F.2d 858, 872, 873, in denying a new trial to defendant. Even assuming that the news accounts were prejudicial, we are convinced that individual jurors were not influenced by them, that they did not affect the jury's deliberations, and that the district court did not abuse its discretion in refusing to grant a new trial.

AFFIRMED.