UNITED STATES of America, Petitioner–Appellee,

v.

Vincent BRUNO, Defendant–Appellant.

No. 89–3521.

United States Court of Appeals, Fifth Circuit.

June 19, 1990.

Rehearing Denied Aug. 6, 1990.

---

Dwight Doskey, Cherbonnier & Doskey, Harvey, La., for defendant-appellant.

James B. Letten, John Volz, U.S. Atty., U.S. Dept. of Justice, New Orleans, La., Sara Criscitelli, Deborah Watson, Dept. of Justice, Washington, D.C., for petitioner-appellee.

Before CLARK, Chief Judge, and WISDOM, and SMITH, Circuit Judges.

WISDOM, Circuit Judge:

I

The petitioner/appellant, Vincent Bruno, was convicted in 1986 of two counts of wire fraud in violation of 18 U.S.C. § 1343 and of one count of conspiracy to commit fraud and bribery in violation of 18 U.S.C. § 371.[1] Bruno was sentenced to eighteen months imprisonment on the conspiracy count, and to concurrent terms of three years' probation on each of the two wire fraud counts. Additionally, Bruno was fined $1,000 for each of the three counts of conviction, for a total fine of $3,000. Bruno has completed his prison term for the conspiracy count but has not yet completed his three years probation for the substantive wire fraud counts.

Two theories of wire fraud were included in the jury instruction at Bruno's trial. One of those theories was the "intangible rights" or "right to honest government" theory of wire fraud that the Supreme Court rejected in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). The Court in *McNally* held that the federal wire fraud statute, 18 U.S.C. § 1341 et seq., applies only to schemes to defraud victims of property rights and does not apply to schemes that defraud citizens of their right to honest government.[2]

Bruno petitioned for habeas relief under 28 U.S.C. § 2255 to vacate his convictions for wire fraud and conspiracy on the grounds that those convictions had been invalidated by *McNally*. The district court denied that petition. Bruno now appeals from that denial.

II

The government agrees with the petitioner, Bruno, that, since the jury instruction regarding wire fraud included the "intangible rights" theory rejected in *McNally*, the petitioner's wire-fraud convictions must be reversed.[3] We agree as well and reverse Bruno's convictions for wire fraud.

---

1. This court affirmed Bruno's convictions on January 29, 1987. *See United States v. Bruno,* 809 F.2d 1097 (5th Cir.), *cert. denied,* 481 U.S. 1057, 107 S.Ct. 2198, 95 L.Ed.2d 853 (1987).

2. The wire fraud statute was amended after the Supreme Court's holding in *McNally* expressly to include the intangible rights theory. *See* 18 U.S.C. § 1346 (1988).

3. Obviously, the government did not agree with

■ Bruno contends that *McNally* requires reversal not only of his wire fraud convictions but also of his conspiracy conviction. The government disagrees, arguing that the intangible rights theory of wire fraud could not have infected the conspiracy conviction because neither the prosecutor in presenting the case nor the court in instructing the jury made any direct or indirect reference to an intangible rights theory of wire fraud when discussing the conspiracy charge. The conspiracy count in the indictment did not refer to the intangible rights theory but, rather, charged: 1) conspiracy to defraud two individuals (the Langfords) of money in violation of 18 U.S.C. § 1343, and 2) conspiracy to use interstate commerce to commit an act of bribery of a public official in violation of 18 U.S.C. § 1952.[4] Thus, the intangible rights theory of wire fraud was no part of the conspiracy charge as stated in the indictment. Nonetheless, the conspiracy conviction can now be upheld by this court only if it was not infected in any way at trial by the intangible rights theory.[5] A review of the record reveals that the intangible rights theory was connected to the conspiracy charge by the prosecutor in opening

arguments when she stated that "[with respect to Count One of the indictment, [the] defendants are charged with … conspiring to commit wire fraud on the Langfords *and on the State of Louisiana* …". Trial Tr. at 51 (emphasis added). The prosecutor's reference at the start of trial to committing wire fraud on the State of Louisiana connected the intangible rights theory of wire fraud to the conspiracy charge against Bruno. No subsequent statements or instructions by the parties or the court cured that error. We therefore find that there is at least some possibility that the jury based its conspiracy conviction on conspiracy to commit the intangible-rights version of wire fraud. Because there is a possibility that the jury based its conspiracy conviction on the invalid intangible-rights theory of wire fraud, that conviction is subject to reversal.[6]

■ Because Bruno has already served his sentence on the conspiracy count, his only avenue of relief with regard to that count would be a writ of error coram nobis pursuant to the All Writs Act, 28 U.S.C. § 1651.[7] *See United States v. Morgan,*

the petitioner on this issue when this habeas petition was before the district court. The government has changed its position on this issue because of this court's holding in *United States v. Marcello,* 876 F.2d 1147 (5th Cir.1989), that was issued after the instant case was before the district court. In *Marcello,* this court rejected the argument on which the government had relied in arguing the instant case before the district court and on the basis of which the district court held for the government in the case.

4. On direct appeal, the Fifth Circuit found that there was insufficient evidence that Bruno had conspired to defraud the Langfords but upheld the conspiracy conviction because "the evidence was more than sufficient to support a finding that Bruno … [was] guilty of conspiring to bribe [Louisiana public officials]". *Bruno,* 809 F.2d at 1103.

5. In applying *McNally* to cases charging conspiracies with multiple objectives, federal courts have held that a conspiracy conviction must be overturned if there is a possibility that the jury convicted for conspiracy to perpetrate the intangible rights version of wire fraud. *See e.g., U.S. v. Kato,* 878 F.2d 267, 269 (9th Cir.1989); *U.S. v. Rastelli,* 870 F.2d 822, 830 (2d Cir.1989); *U.S. v. Doherty,* 867 F.2d 47, 57 (1st Cir.1989).

6. In upholding the conspiracy conviction on direct appeal, this court was able to assume that the jury did not base its conspiracy conviction on conspiracy to defraud the Langfords because there was insufficient evidence of that conspiracy. This court was, therefore, able to assume that the conspiracy conviction was based on the bribery-through-interstate-commerce charge. The issue in the instant case is different. We cannot assume that the jury did not base its conspiracy conviction on conspiracy to commit the intangible-rights version on wire fraud. There was sufficient evidence of that form of conspiracy, and the jury may have convicted on that basis.

7. Although the petitioner did not bring this action as a petition for coram nobis relief, the district court handled the part of the petition relating to the conspiracy count as if it were a petition for a writ of error coram nobis. In so doing, the district court acted properly. As this court stated in *Shelton v. United States,* " 'federal courts have long disregarded legalistic requirements in examining applications for the writ [of error coram nobis] and judged the papers by the simple statutory test of whether facts are alleged that entitle the applicant to relief' ". 242 F.2d at 505 n. 3. We therefore hold that, although the petitioner did not bring

346 U.S. 502, 512–13, 74 S.Ct. 247, 98 L.Ed. 248 (1954); *Shelton v. United States,* 242 F.2d 101, 111 (5th Cir.1957). This court has held that, to be entitled to coram nobis relief, a petitioner must establish both that he is suffering civil disabilities as a consequence of the criminal conviction and that the error involved in his conviction is "of the most fundamental character"—that is, error that has resulted in a complete miscarriage of justice. *United States v. Marcello,* 876 F.2d at 1154; *United States v. Hay,* 702 F.2d 572 (5th Cir.1983); *Puente v. United States,* 676 F.2d 141, 145 n. 2 (5th Cir.1982).

 Because the intangible rights theory of wire fraud, which, under *McNally,* is not a criminal violation, may have infected the jury's decision to convict on the conspiracy charge, it is possible that the jury convicted for conspiracy to commit a noncriminal act. Such a conviction would constitute a "complete miscarriage of justice" such as is required for coram nobis relief.

Regarding the other requirement for coram nobis relief, that the petitioner is suffering civil disabilities as a consequence of the criminal conviction, the district court stated that, "because the [district] court denies Bruno's motion on other grounds, the court does not determine whether Bruno has shown 'adverse collateral consequences' necessary for issuance of this writ". Since the appellant brought this case under the federal habeas statute, 28 U.S.C. § 2255, rather than as a petition for a writ of error coram nobis, there is no record regarding the question of adverse collateral consequences. The petitioner asserts that he is being substantially harmed by continuing disabilities under Louisiana law as a result of his criminal conviction. We remand this case for a determination regarding the existence of substantial adverse collateral consequences.

### III

The Supreme Court's decision in *United States v. McNally* requires reversal of peti-

tioner Bruno's wire fraud convictions. Because the intangible rights theory of wire fraud may have infected the conviction for conspiracy, the conspiracy conviction is also invalidated by *McNally.* Because the petitioner has already served his sentence for conspiracy, the only avenue of relief available to him is through a writ of error coram nobis. We REMAND this case for a determination of whether the petitioner suffers the continuing disabilities required for coram nobis relief. If the district court finds that such continuing disabilities exist, then that court should issue an appropriate writ of error coram nobis.

---

this action as a petition for coram nobis relief, the petition may be treated as one for coram nobis relief.