UNITED STATES of America, Plaintiff–Appellee,

v.

Orrin SHAID, Jr., Defendant–Appellant.

No. 88–2716.

United States Court of Appeals, Fifth Circuit.

Oct. 24, 1990.

Dane Smith, Asst. U.S. Atty., Tyler, Tex., Bob Wortham, U.S. Atty., Tyler, Tex., Tom Booth, Atty., Dept. of Justice, Crim.Div., Washington, D.C. for U.S.

Before POLITZ, KING and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Pursuant to 28 U.S.C. § 2255, Orrin Shaid collaterally attacks his 1973 convictions for violations of criminal banking statutes. After a lengthy examination of the case, a United States magistrate recommended that relief be denied Shaid. The district court adopted the Report of the Magistrate and denied relief. We affirm the district court's denial of relief on most of Shaid's claims. We find, however, that the district court failed to examine thoroughly one of Shaid's claims, and we remand for further consideration of that claim.

## I.

In 1973, Orrin Shaid was convicted of and sentenced for conspiracy to misapply bank funds and to make false statements in a loan application in violation of 18 U.S.C. § 371; nineteen counts of misapplication of bank funds in violation of 18 U.S.C. § 656; two counts of making false statements in a loan application in violation of 18 U.S.C. § 1014; six counts of making a false entry in a bank statement in violation of 18 U.S.C. § 1005; and four counts of accepting a gift in exchange for procuring a bank loan for a third party in violation of 18 U.S.C. § 215. Shaid was sentenced to eight years imprisonment.

The facts of Shaid's case, and particularly of the conspiracy, are set out in detail in *United States v. Wilson*, 500 F.2d 715, 718–20 (5th Cir.1974), *cert. denied, sub nom., Levin v. United States*, 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975). We offer only a brief summary of them here. The evidence introduced at Shaid's trial indicated that, in 1971, he and a group

Orrin Shaid, Jr., Terre Haute, Ind., pro se.

of investors purchased the Shireno State Bank of Shireno, Texas. Shaid apparently had attained the financial backing of his investors by promising them a readily available supply of loans and credit from the bank once it was purchased. After the bank was purchased, the bank's president authorized a bank loan to each of the investors. The government contended that none of those loans was ever repaid.

Two months after the Shireno purchase, Shaid purchased the First State Bank of Grandview, Texas. Shortly thereafter, First State granted unsecured loans to Shaid as well as other members of his group. Several of those loans were used to write off the notes and interest at the Shireno bank.

Soon after the First State purchase, bank directors and examiners at both banks began an investigation of Shaid. That investigation yielded evidence that Shaid and many of the investors, in order to obtain loans, filed financial statements that falsely inflated their assets. Specifically, Shaid had executed promissory notes under other persons' names.

On direct appeal, this Court affirmed Shaid's convictions. Soon thereafter, Shaid filed a motion under 28 U.S.C. § 2255 to vacate his sentence, based on a challenge to the Parole Commissions Guidelines. In 1977, that motion was denied. Shaid was later granted parole.

In 1982, Shaid was convicted on federal bank fraud charges in another case. Due to the earlier conviction, Shaid received an enhanced sentence. The facts of that case are set out in our opinion affirming his conviction. *See United States v. Shaid,* 730 F.2d 225 (5th Cir.), *cert. denied,* 469 U.S. 844, 105 S.Ct. 151, 83 L.Ed.2d 89 (1984).

As a result of the 1982 conviction, a parole violator detainer was lodged against Shaid for violation of his parole and he was taken into custody on that basis. Consequently, Shaid's petition is based upon being "in custody" for the 1973 conviction.

In 1984, Shaid filed, *pro se,* a second § 2255 motion to vacate the 1973 sentence. After an evidentiary hearing and review of Shaid's claims, the magistrate, in a 75 page report, recommended denial of Shaid's motion. The district court adopted the magistrate's findings and recommendations and, after a *de novo* review of Shaid's objections to the report, denied Shaid's motion.

Shaid appeals, raising essentially ten points of error. While two points of error relate to the handling of the current collateral attack, the first eight challenge his 1973 conviction. With one possible but unimportant exception, none of the objections Shaid raises was specifically raised at trial, in his direct appeal, or in his first collateral attack.

## II.

■ 28 U.S.C. § 2255 provides the usual avenue by which federal prisoners collaterally attack their convictions.[1] They may only do so, however, on the basis of errors

---

1. In pertinent part, the statute provides:

    A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

    28 U.S.C. § 2255.

    In her report, the U.S. Magistrate characterized the § 2255 motion in the same way we have defined it, as a "collateral attack" on a conviction. Relying on legislative history, Shaid contests this characterization. He insists that § 2255, unlike § 2254, is meant to be a *continuation* of the criminal trial, not a separate civil attack on the final criminal conviction. Shaid's argument is not unfounded; indeed, a similar position was set out by Justice Brennan in *United States v. Frady, infra. See Frady,* 456 U.S. at 178–87, 102 S.Ct. at 1600–04 (Brennan, J., dissenting); *see also id.* at 175–78, 102 S.Ct. at 1598–99 (Blackmun, J., concurring). The majority of the Supreme Court sitting in the *Frady* case, however, flatly rejected that position. Seeing "no basis for affording federal prisoners a preferred status when they seek postconviction relief," *id.* at 166, 102 S.Ct. at 1593, the court applied law that had been developed under § 2254 to Frady's case. We must follow that established law.

of law that constitute "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)). § 2255 extends primarily to those issues that are of constitutional or jurisdictional magnitude. *See id.; United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). Any purported error not of such magnitude may only be considered under a § 2255 motion if it could not have been raised on direct appeal and, if condoned, would result in a complete miscarriage of justice. *Capua*, 656 F.2d at 1037.

On a § 2255 motion, if a convicted defendant raises trial errors to which no contemporaneous objections were made, she or he must meet a two part requirement. First, the defendant must show "cause" as to why the objection was not made at trial and, second, the defendant must show actual prejudice resulting from the errors of which she or he complains. *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982). This standard, of course, does not apply to claims of ineffective assistance of counsel, which must be reviewed *de novo*.

Although the *Frady* test has been applied by many courts in evaluating § 2255 claims where no objection was raised at trial, there is a recognized exception to the test's application. If a defendant has been convicted of a criminal act that becomes no longer criminal, courts generally acknowledge that such a conviction cannot stand. *See, e.g., Addonizio*, 99 S.Ct. at 2241 (discussing *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), stating that refusal to vacate a sentence where a change in substantive law had rendered defendant's conduct not a violation of the criminal statute would result in a "complete miscarriage of justice"); *Callanan v. United States*, 881 F.2d 229, 231–32 (6th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1816, 108 L.Ed.2d 946

(1990); *see also United States v. Bruno*, 903 F.2d 393 (5th Cir.1990) (applying, although not specifically stating, the rule); *United States v. Bush*, 888 F.2d 1145, 1145–46 (7th Cir.1989); *United States v. Stoneman*, 870 F.2d 102, 105 (3rd Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989). *Frady* itself recognized this exception, emphasizing that the case would have been different if Frady had argued that he was not guilty of the crime for which he was convicted. *See Frady*, 456 U.S. at 171, 102 S.Ct. at 1596.[2] If, then, a defendant has been convicted of a crime of which he is innocent, or has been convicted of acts that are no longer criminal, courts need not consider cause and prejudice. *Cf. Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) ("[W]here a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.")

### III.

Before addressing Shaid's attacks on his 1973 conviction, we first consider his objections to the handling of his § 2255 motion. Shaid makes two claims. First, he contends that the district judge failed to make a *de novo* review of his § 2255 motion and his objections to the magistrate's report. Second, he argues that the magistrate committed a reversible error by denying Shaid's request for a copy of the transcript of the 1973 trial. We find that neither the judge nor the magistrate committed reversible error by these actions of which Shaid complains.

### A. *De Novo Review*

Shaid argues that the district court failed to make a *de novo* review of his motion and objections, as required by 28 U.S.C. § 636(b)(1) and Article III of the Constitution. He also complains that the district judge did not make findings of fact or conclusions of law.

---

**2.** We discuss in detail *Frady*'s recognition of this exception in Section IV, where we consider

Shaid's attack on the *mens rea* requirement applied to his § 656 convictions.

To support his claim that the district court should have made findings of fact and conclusions of law, Shaid cites a number of cases, including our opinion in *United States v. Daly*, 823 F.2d 871 (5th Cir. 1987). In that case, we stated that unless the record shows conclusively that the petitioner is not entitled to relief, the district court must state findings of facts and conclusions of law for its ruling on a § 2255 motion. *See Daly*, 823 F.2d at 872; *see also, United States v. Edwards*, 711 F.2d 633, 633 (5th Cir.1983); *Hart v. United States*, 565 F.2d 360, 361–62 (5th Cir.1978).

■ In making his argument, however, Shaid ignores one important distinction between his case and those cited above. While Shaid's case was referred to a magistrate to make findings of fact and recommendations for disposition, in accordance with 28 U.S.C. § 636, there is no indication that a magistrate ever reviewed the other cases. Indeed, our rationale for sending those cases back to the district court was to provide us with a record sufficient for appellate review. *See, Hart*, 565 F.2d at 361. In contrast, the magistrate's 75–page report in Shaid's case gives us a sufficient record for review.

■ Shaid's contention that the district judge did not make a *de novo* review of the magistrate's report and Shaid's objection to the report is also without merit. The district court's order dismissing Shaid's claim reads in part:

> The Report of the Magistrate, which contains her findings of fact and recommendations for the disposition of such action, has been presented for consideration, and having made a *de novo* review of the objections raised by the Petitioner thereto, the Court is of the opinion that the findings and conclusions of the Magis-

trate are correct, and the objections of Petitioner are without merit; hence the Court adopts the Report of the United States Magistrate as the findings and conclusions of this Court.

The language of the order indicates that the district court complied with 28 U.S.C. § 636(b)(1) in conducting its review. In *Washington v. Estelle*, 648 F.2d 276 (5th Cir.), *cert. denied*, 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981), the petitioner made a similar claim regarding a district court's review of a magistrate's report on a § 2254 habeas motion. In that case we found that the order, which was strikingly similar to the one in this case,[3] conformed to the statute. *See Washington v. Estelle*, 648 F.2d at 282.

### B. *Denial of Transcript*

■ Following Shaid's 1973 conviction, Shaid and his codefendants apparently purchased a copy of the trial transcript to aid them in their direct appeals. In preparing the instant motion, Shaid had access to and used the jury instruction portion of that transcript. He complains that he was unable to locate the remainder of the transcript and that the magistrate erred by not providing him with a copy free of charge.[4] Shaid argues that the denial of the transcript deprived him of due process and effective assistance of counsel.

Congress has authorized the government to pay transcript fees for those prisoners bringing cases under § 2255 "if the trial judge or a circuit judge certifies that the suit or appeal is not frivolous and that the transcript is needed to decide the issue presented by the suit or appeal." 28 U.S.C. § 753(f). This statute was upheld as constitutional by the Supreme Court in *United*

---

3. The district court's order read:
   The Court having considered the Findings and Recommendations of the United States Magistrate · ... and the Court further having reviewed and considered the written objections filed by the Petitioner ... and the Court having made a *de novo* review of the objections raised by the Petitioner and the Court being of the opinion that the findings are correct and that the objections are without merit ...
   *Washington v. Estelle*, 648 F.2d at 282.

4. When Shaid first requested a copy of the transcript, he represented that he had no access whatsoever to it. The magistrate denied that motion, finding that Shaid obviously had a copy of the transcript since he specifically referred to the jury instructions in his request. In a later motion for production of certain portions of the transcript, Shaid acknowledged that he already possessed the jury instruction portion.

*States v. MacCollum,* 426 U.S. 317, 96 S.Ct. 2086, 48 L.Ed.2d 666 (1976).

Shaid admits that in addition to the jury instructions, he had access to several motions that were made immediately subsequent to his trial, one of which he requested in his Motion for Production of Certain Portions of Transcript. He also refers to the entire transcript in his brief before us, which indicates that he now has access to it. With that access, he does not convince us that he suffered from not having it earlier. Indeed, he does not raise any new issues that surfaced from his review of the record. Instead, he merely points to portions of the record in an attempt further to bolster the claims he made before the magistrate.

We therefore find that the magistrate did not err by denying Shaid a free copy of the transcript. Shaid apparently had access to those portions of the transcript needed to decide the issues presented by his § 2255 motion. To the extent that he now points out portions of the record that might be relevant to assessing his claims, we take them into our consideration of his case.

### IV.

Shaid's most compelling collateral attack on his 1973 conviction is his assertion that the district judge wrongly instructed the jury as to the *mens rea* requirement under 18 U.S.C. § 656. He was convicted of the nineteen misapplication of funds charges under that section. 18 U.S.C. § 656 provides that a crime is committed by someone connected with a bank who "willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets

5. Shaid insists that his attorney objected to the instruction. He points to two post-trial motions, one for judgment of acquittal and one for judgment notwithstanding verdict, where his attorney broadly challenged the willful misapplication instruction. The record reveals, however, that Shaid's attorney did not specifically object to the reckless disregard portion of the instruction but merely stated that the court inadequately instructed the jury. On direct appeal, he argued that the term "willfully misapplied" was unconstitutionally vague. *Wilson,*

or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver." The trial judge instructed the jury in some detail as to the meaning of "willful misapplication" under the statute. He explained:

The general nature of the requisite intent has been expressed as a reckless disregard of the bank's interests, and proof of naturally foreseeable adverse consequences has been held sufficient to prove criminal intent. More specifically, proof that normal loan procedures were circumvented or facts concealed from the Board of Directors would be indicative of fraudulent intent. Proof of a failure to obtain insufficient collateral, proof of the repeated cashing of insufficient fund checks or proof of self-interest on the part of the bank officer or employee in an otherwise questionable transaction, all would be evidence of intent to injure or defraud.

Shaid contends that this instruction was improper because reckless disregard is not sufficient to show intent under the statute.

Shaid's attorney did not object to this portion of the instruction, either at trial or on appeal.[5] Nevertheless, in our review of the case on direct appeal, we noted in our general discussion of the constitutionality of the instruction that "reckless disregard of the interest of a bank is, for the purpose of 'willful misapplication,' the equivalent of intent to injure or defraud." *Wilson,* 500 F.2d at 720. For support of that proposition we cited two cases from other circuits, *Logsdon v. United States,* 253 F.2d 12 (6th Cir.1958) and *Giragosian v. United States,* 349 F.2d 166 (1st Cir.1965).[6] After *Wilson,* we reiterated that position a number of

500 F.2d at 720. More important, however, even though Shaid's attorney proposed an instruction requiring knowledge, he did not object to the actual instruction that was given.

6. In *United States v. Adamson, infra,* we noted that those two cases did not really support the proposition for which *Wilson* cited them since neither "held that recklessness was the *equivalent* of willfulness or intent to defraud. Rather, both cases properly state that reckless disregard can justify an *inference* of intent." *Adamson,* 700 F.2d at 963 (emphasis in original).

times. Indeed, at least three times we cited *Wilson* for support of the proposition that reckless disregard is the proper *mens rea* under § 656. *See United States v. Salinas*, 654 F.2d 319, 327 (5th Cir.1981) ("[I]t is well settled that intent can be proved under Section 656 by a showing of reckless disregard for the interests of the bank.") (citing *Wilson*); *United States v. Welliver*, 601 F.2d 203, 210 (5th Cir.1979) ("As pertains to § 656, this court has held that a 'reckless disregard of the interest of a bank is, for purpose of "willful misapplication," the equivalent of intent to injure or defraud.'") (citing *Reynolds, infra,* quoting *Wilson*); *United States v. Reynolds*, 573 F.2d 242, 244–45 (5th Cir.1978).

■ In 1983, however, we considered the issue en banc and we changed the law. In *United States v. Adamson*, 700 F.2d 953 (5th Cir.) (Unit B en banc), *cert. denied*, 464 U.S. 833, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983), we determined that the proper *mens rea* requirement standard for § 656 is knowledge. "In order to convict a defendant for willfully misapplying funds with intent to injure or defraud a bank, the government must prove that the defendant *knowingly* participated in a deceptive or fraudulent transaction." *Adamson*, 700

F.2d at 965 (emphasis in original). Accordingly, we explicitly overruled "that portion of *United States v. Welliver* [citation omitted] which held that the proper *mens rea* standard for § 656 was a reckless disregard of the interests of the bank." *Id.* We went on to explain that "to the extent that *Salinas* follows *Welliver* in lowering the mens rea standard for § 656 to reckless disregard, we also overrule *Salinas* today." *Id.* at 965 n. 18.[7] We then determined that an instruction equating reckless disregard with knowledge constitutes reversible error. *Id.* at 965 (citing *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)).[8]

■ In evaluating Shaid's collateral attack on the jury instruction, the magistrate correctly assumed the jury instructions were defective under *Adamson*. The trial court introduced its instruction on intent by saying that it had been equated with reckless disregard for the interests of the bank. Even though some of his elaboration might have tended toward suggesting that knowledge might be inferred from evidence of reckless disregard, the fact is that his general statement of the rule equated the two.[9] We conclude that the instruction was error.

7. The *Adamson* decision, however, was careful to avoid overruling *Wilson* and *Reynolds*. It determined that the language in *Wilson* was dictum and that *Reynolds*, because it was reviewing for sufficiency of the evidence, did not wrongly consider recklessness for that purpose. *Adamson* did not examine the trial court's instructions to the jury in either *Wilson* or *Reynolds* since the *mens rea* issue had not been specifically raised on direct appeal in either case. Therefore, the fact that *Adamson* chose not to overrule *Wilson* does not affect our analysis since it did not condone the instruction that was given.

8. Part of the instruction in *Adamson* was similar to that in Shaid's case. It read: "A reckless disregard of the interest of the bank is the equivalent of intent to injure or defraud the bank." *Adamson*, 700 F.2d at 965.

9. *Adamson* drew a distinction between equating knowledge and reckless disregard and merely allowing evidence of reckless disregard to be used to infer knowledge. This distinction came about, in large part, because a number of courts of appeals had considered the latter construction in reviewing a conviction for sufficiency of

the evidence. The court stated that "[w]here sufficiency is at issue, a finding that the accused acted recklessly may be enough to sustain a jury verdict, because a jury may properly *infer* the requisite intent." *Adamson*, 700 F.2d at 962 (emphasis in original); *see also United States v. Cauble*, 706 F.2d 1322, 1355 (5th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984) (explaining *Adamson*). Even with this distinction, though, the court made it clear that words equating knowledge and reckless disregard in determining intent "cannot be used in a § 656 instruction, no matter what other words are also used." *Adamson*, 700 F.2d at 969 (Roney & Fay, JJ., dissenting in part).

This court has followed this distinction as we have continued to analyze jury instructions regarding *mens rea* under § 656. In *United States v. Kington*, 875 F.2d 1091, 1096–1100 (5th Cir. 1989), for example, we upheld an instruction indicating that intent exists "if the defendant acts *knowingly* and if the natural consequences of his conduct is or may be to injure the bank." *Id.* at 1096 (emphasis added). While the instruction contained language similar to part of the instruction in Shaid's case, it omitted the crucial "reckless disregard" language and replaced it with "knowingly."

Because Shaid's attorney did not object to the instructions at trial and because we now review the issue on a § 2255 motion, we do not automatically reverse Shaid's § 656 convictions. The magistrate, following *United States v. Frady, supra,* reviewed Shaid's case under the cause and prejudice standard. She determined that Shaid's attorney had no cause for failing to object to the instruction since the law was not absolutely settled against him at that time. Indeed, as *Adamson* explains, the development of the improper *mens rea* requirement in the Fifth Circuit in many ways began with Shaid's case. *See Adamson,* 700 F.2d at 962–63. Finding no cause, the magistrate saw no need to turn to the prejudice standard.

We do not here review the magistrate's application of the cause and prejudice standard. We do not do so because we find that the magistrate reached the issue prematurely. The result was a failure to consider adequately Shaid's claim. Shaid argues before us, as he did before the magistrate and in his objections to the report of the magistrate, that he was wrongly convicted because he is innocent of an essential element of the intent to defraud. That element is knowledge. He contends that much of his defense at trial and on appeal was that he did not have the requisite intent to misapply the funds. Specifically, he argued on several occasions that he or those whom he was accused of aiding and abetting did not have certain *knowledge.* Both at trial and on appeal the government responded that reckless disregard had been proved.

Shaid argues that if he was convicted of recklessly disregarding the interests of the bank, rather than knowingly misapplying funds, his conviction cannot stand. We agree. If Shaid's contentions are correct, his case differs significantly from *Frady,* the case that first applied the cause and prejudice standard to a § 2255 motion. In *Frady,* the defendant was convicted of first-degree murder. In his § 2255 motion, he argued that the jury had been erroneously instructed on malice, an element of first-degree murder. He pointed out that the trial court's instructions relieved the

government of proving malice beyond a reasonable doubt. In turn this resulted in an inadequate opportunity for the jury to consider a manslaughter verdict. *See Frady,* 456 U.S. at 169–70 & n. 18, 102 S.Ct. at 1595 & n. 18. Because Frady had not objected to the instruction at trial or raised the issue on appeal, the Supreme Court analyzed the case under the cause and prejudice standard first enunciated in *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). The *Frady* court did not reach the cause prong of *Davis* because it found that Frady had shown no prejudice. The basis of its finding of lack of prejudice was that the instruction did not have any impact on Frady's conviction. Frady never had claimed at trial that he did not have the requisite malice. Had he made that claim, the Supreme Court recognized that his plea for relief could not be ignored:

> [W]e emphasize that this would be a different case had Frady brought before the District Court affirmative evidence indicating that he had been convicted wrongly of a crime of which he was innocent. But Frady, it must be remembered, did not assert at trial that he and Richard Gordon beat Thomas Bennett to death without malice. Instead, Frady claimed he had nothing whatever to do with the crime. The evidence, however, was overwhelming, and Frady promptly abandoned that theory on appeal. [citation omitted]. Since that time, Frady has never presented colorable evidence, even from his own testimony, indicating such justification, mitigation, or excuse that would reduce his crime from murder to manslaughter.

*Frady,* 456 U.S. at 171, 102 S.Ct. at 1596.

After a thorough review of the record, we find that Shaid's case differs critically from *Frady.* Shaid's defense did involve the intent element of § 656. Even though Shaid's attorney did not challenge with precision the equation of reckless disregard with intent, he continually argued that there was no proof that Shaid or those he allegedly aided had knowledge of misapplying funds. In fact, Shaid's requested jury

instructions included the following language regarding the *mens rea* requirement of § 656:

> In determining whether the Defendant, at the time the (loan was made/check was issued) had the intent to defraud the bank, you must distinguish between a criminal misapplication and conduct which amounts merely to poor administration or judgment in managing the bank's assets. The term "criminal misapplication" means that the action was taken willfully, by one who knew that it was illegal, and who acted for the purpose of defrauding the bank. If you find however that the action charged against the Defendant was not acting with the purpose of injuring the bank in mind, or that he was unaware of any illegality of his conduct, then you must find the Defendant not guilty.

That instruction was rejected. In Shaid's motion for acquittal, the issue was again raised regarding several counts. At times the government responded by showing specific knowledge but at other times it did not. Several times, the government suggested or specifically stated that the evidence proved reckless disregard for the interests of the bank.

On direct appeal, Shaid again raised the issue of whether he and some of his co-defendants had knowledge of some of the § 656 violations. As to several of those counts, the government responded that Wilson, the co-defendant whose knowledge was in question, either knew that certain statements regarding loans were false or that he made the loans without a cursory verification of the statements. Later, the government's brief—after reviewing the conduct charged in those counts—concluded that "[s]uch conduct amounts to more than mere bad judgment or maladministra-

tion. It amounted to conduct which was in reckless disregard of the interests of the bank and which was an unjustifiable use of bank funds. Such conduct clearly constitutes misapplication." Given that this dispute was continued in Shaid's direct appeal, it is not surprising that we noted in our opinion that recent cases had held that reckless disregard equalled intent to injure or defraud under § 656. *See Wilson*, 500 F.2d at 720.

There is, then, evidence in the record that Shaid might have been convicted of reckless disregard for the interests of a bank. As our decision in *Adamson* makes clear, reckless disregard without knowledge cannot equal a crime under § 656. Accordingly, if Shaid's convictions rest on that theory, his convictions cannot stand. Not only would he have been convicted of crimes he did not commit (§ 656 violations), he would have been convicted of conduct that is no longer criminal under the statute. To allow such convictions to stand would result in a complete miscarriage of justice. *See Addonizio*, 442 U.S. at 187, 99 S.Ct. at 2241.[10]

Because neither the magistrate nor the district judge considered Shaid's claim that he is innocent of crimes for which he has been convicted, we remand to the district court for further consideration. Shaid did not contest on *mens rea* grounds all nineteen counts of misapplication of funds of which he was found guilty. For this reason, the district court will need to review the record to determine which counts raise a legitimate concern as to whether Shaid or those whom he is alleged to have aided had the requisite knowledge to violate § 656. The court will then need to make a finding as to whether each of Shaid's § 656 convictions rested on only a finding of reckless disregard for the interests of the bank.

---

10. Most recently, this rule of vacating sentences for conduct that no longer constitutes the crime charged has been applied to mail fraud convictions based on an "intangible rights" theory. For several years, convictions under 18 U.S.C. § 371 for defrauding citizens of their intangible right to honest and impartial government were common. In 1987, however, the Supreme Court held that such actions did not violate the statute. *See McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Although Congress later added specific language to the statute to make such action illegal, *see* 18 U.S.C. § 1346 (West Supp.1990), the courts have granted collateral relief to those defendants whose mail fraud convictions were based on an intangible rights theory and whose conduct occurred prior to the statutory change. *See, e.g., United States v. Bruno, supra; United States v. Callanan, supra.*

In its brief, the government suggests that the evidence presented at trial was sufficient to show that Shaid's conduct was knowing. While under a cause and prejudice standard, sufficiency of the evidence might go to the prejudice prong,[11] it cannot satisfy inquiry as to the basis of each conviction. The fact that an alternative theory might support a conviction cannot sustain a conviction that was based on an unconstitutional theory. *Cf. Callanan v. United States,* 881 F.2d at 233. Hence, the question for the district court is not whether the evidence presented at trial is sufficient to sustain Shaid's convictions on the § 656 charges but whether in each questioned instance Shaid actually was convicted on a reckless disregard theory.

## V.

Shaid attacks his conviction on seven remaining grounds. These grounds are: (1) that the trial court erred in its instruction to the jury regarding the "connected" with a bank requirement under 18 U.S.C. § 656; (2) the trial court improperly instructed the jury as to the *mens rea* requirement and essential elements of 18 U.S.C. § 1005; (3) the trial court erred by not striking certain overt acts from the conspiracy count of the indictment; (4) the trial court erred by allowing the verdict to be returned by an eleven member jury, although Shaid had stipulated that if one of the jurors became unable to serve, he would be willing to proceed to a verdict by the remaining members; (5) the indictment resulted from misinformation given to the grand jury; (6) the prosecutor suppressed exculpatory evidence from the grand and petit juries; (7)

Shaid was denied effective assistance of counsel.

As to the first six attacks, the magistrate thoroughly considered the substance of each of these claims and found no merit to any of them. To the extent that there was any possibility that an error had occurred, particularly regarding Shaid's jury instruction claims, the magistrate found no cause for Shaid's failure to object.[12] Our review of the record and the relevant law indicates that the magistrate properly determined these issues. Since Shaid sheds no new light on these claims on his appeal of the district court's denial of his motion, we do not further address them here.

The magistrate with great care scrutinized Shaid's final attack on his conviction, his claim of ineffective assistance of counsel. Indeed, the magistrate conducted a thorough hearing on both Shaid's claim that his counsel was ineffective in failing to call a certain witness and the government's motion to dismiss that claim. She then devoted 35 pages of her report to an analysis of each of Shaid's ineffective assistance claims. After reviewing the magistrate's report, we find no error in her determination that Shaid's trial counsel was not constitutionally ineffective. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## VI.

With the exception of Shaid's claim regarding the *mens rea* requirement under § 656, we affirm the district court's denial of Shaid's petition. We remand the case to the district court for further review of the

---

**11.** Under *Frady,* prejudice is determined by " 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.' " *Frady,* 456 U.S. at 169, 102 S.Ct. at 1595 (quoting *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977)).

**12.** In making several of his claims, including those involving his attack on the instruction involving the *mens rea* requirement of § 656, Shaid argues that his "cause" for not raising the claims is ineffective assistance of counsel. He

argues that the magistrate failed to consider fully that claim. While we may consider Shaid's ineffective assistance of counsel claims on a § 2255 motion, an ineffective assistance claim cannot satisfy the *Frady* cause requirement. *See Washington v. Estelle,* 648 F.2d at 278; *Lumpkin v. Ricketts,* 551 F.2d 680 (5th Cir.), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316 (1977); *see also United States v. Rusmisel,* 716 F.2d 301, 303–04 n. 5 (5th Cir. 1983). Accordingly, the magistrate properly considered the ineffective assistance claims separately.

§ 656 claims and for further proceedings as necessary.

AFFIRMED IN PART, REMANDED IN PART.

KING, Circuit Judge, dissenting:

The majority argues that the *Frady* cause and prejudice standard should not apply to the petitioner, Shaid, because Shaid, unlike Frady, claimed at trial not to have the required mens rea for conviction of the charged offense. *See United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Because *Frady* cannot be distinguished on this basis, and because *Frady* is controlling Supreme Court precedent, I respectfully dissent.

Frady was convicted of first degree murder by a jury in the Federal District Court for the District of Columbia. In *Frady*, as in the instant case, the Court of Appeals decided, subsequent to the instructions given at Frady's trial, that the trial court's instructions concerning mens rea were improper.[1] Frady sought to overturn his conviction on § 2255 review based on the trial court's improper instructions. The Supreme Court concluded that it could not reach the merits of Frady's claim absent a showing of cause and prejudice for his failure to object.[2] Frady could not demonstrate prejudice, the Supreme Court reasoned, because he defended only on the basis that he did not commit the crime and because the evidence of his guilt and malice was overwhelming.

The majority contends that *Frady* is distinguishable from the instant case because Shaid, unlike Frady, argued at trial that he did not have the proper mens rea to be convicted of willful misapplication of bank funds.[3] In concluding that Frady could not show prejudice resulting from his failure to object to the improper mens rea instructions at trial, Justice O'Connor observes that the case would be different "had Frady brought before the District Court affirmative evidence indicating that he had been convicted wrongly of a crime of which he was innocent."[4] If Frady had argued

1. In *Frady*, the petitioner argued that the Court of Appeals, in cases decided after his trial and appeal, had disapproved instructions identical to those used in his case. As determined by these later rulings, the judge at Frady's trial had improperly equated intent with malice by stating that 'a wrongful act ... intentionally done ... is therefore done with malice aforethought.' *United States v. Frady*, 456 U.S. 152, 157–58, 102 S.Ct. 1584, 1589, 71 L.Ed.2d 816 (1982) (quoting *United States v. Frady*, 636 F.2d 506, 508, n. 6 (1980)).

2. The district court decided that Frady could not raise the error on post-conviction review because he had not challenged the improper instructions on direct appeal or in prior motions. The Court of Appeals reversed, holding that the "plain error" rule applied. The Supreme Court reversed the Court of Appeals.

3. Because our en banc decision in *United States v. Adamson*, 700 F.2d 953 (5th Cir.1983) (Unit B en banc), *cert. denied*, 464 U.S. 833, 104 S.Ct. 116, 78 L.Ed.2d 116 determined that the proper mens rea requirement under 18 U.S.C. § 656 is knowledge rather than reckless disregard, the majority reasons that Shaid may have been convicted of conduct that is no longer illegal. The jury convicted Shaid of willful misapplication of bank funds. Such conduct was, and remains, illegal. The erroneous jury instructions, as is true of virtually any erroneous jury instructions, created the possibility that the jury convicted Shaid on the basis of conduct that is not illegal. A defendant may not complain of erroneous jury instructions on post-conviction review, however, when he failed to object to such instructions at trial or on direct review, unless he demonstrates cause and prejudice for his failure to object. *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Dugger v. Adams*, 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989).

4. The passage states:
   [W]e emphasize that this would be a different case had Frady brought before the District Court affirmative evidence indicating that he had been convicted wrongly of a crime of which he was innocent. But Frady, it must be remembered, did not assert at trial that he and Richard Gordon beat Thomas Bennett to death without malice. Instead, Frady claimed he had nothing whatever to do with the crime. The evidence, however, was overwhelming, and Frady promptly abandoned that theory on appeal. [Citation omitted]. Since that time, Frady has never presented colorable evidence, even from his own testimony, indicating such justification, mitigation, or excuse that would reduce his crime from murder to manslaughter.
   *United States v. Frady*, 456 U.S. at 171, 102 S.Ct. at 1596. This passage occurs at the end of Justice O'Connor's discussion in which she concludes that Frady failed to demonstrate prejudice.

justification, mitigation, excuse, or lack of mens rea, Justice O'Connor contended, he might have demonstrated prejudice as a result of the improper jury instructions. Frady could not establish prejudice, Justice O'Connor reasoned, because he contended only that someone else committed the crime.

The majority ignores Justice O'Connor's discussion of prejudice and claims that this passage reveals an exception to *Frady's* cause and prejudice requirement that applies whenever the defendant argues that he is innocent under the applicable substantive law. Only if Shaid had never argued that he lacked the proper mental state for willful misapplication of bank funds, the majority reasons, would the *Frady* cause and prejudice standard have come into play. The majority's analysis creates an exception to *Frady* that is larger than the general rule, that is unsupported by the case law, and that take Justice O'Connor's discussion entirely out of context.

The majority claims that this non-existent exception has been applied in a series of cases in which prisoners have obtained reversal of mail fraud convictions on post-conviction review following the Supreme Court's rejection of the intangible rights theory of mail fraud in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). These cases establish no such exception.[5] For example, in *Callanan v. United States*, 881 F.2d 229 (6th Cir.1989), cited by the majority, the Callanans, father and son, were convicted of mail fraud based on the intangible rights theory. Far from establishing the majority's asserted exception to *Frady*, the *Callanan* court applied *Frady* and found that cause existed because the Supreme Court's

decision in *McNally* had been completely unexpected.

In several of these post-*McNally* cases, the courts do not discuss the question of procedural default. The question of cause was not a significant issue in these cases because the law before *McNally* was well established that mail fraud convictions could be premised on the intangible rights theory. *See Callanan v. United States*, 881 F.2d 229, 231 (6th Cir.1989) (It was well settled that mail fraud could be based on intangible rights theory); *United States v. Ochs*, 842 F.2d 515, 521 (1st Cir.1988) ("It [*McNally*] was, without doubt, a departure from the law of every court of appeals—including this one—to consider the issue of intangible rights mail fraud prosecutions."); *United States v. Piccolo*, 835 F.2d 517, 521 (3rd Cir.1987) (Aldisert, J., dissenting), *cert. denied, sub nom., Piccolo v. United States*, 486 U.S. 1032, 108 S.Ct. 2014, 100 L.Ed.2d 602 (1988) (*McNally* was "blockbusting"); *United States v. Slay*, 673 F.Supp. 336, 343 (E.D.Mo.1987), *aff'd*, 858 F.2d 1310 (8th Cir.1988) (*McNally* was "a total surprise"); *United States v. Doherty*, 675 F.Supp. 726, 728 (D.Mass.1987) aff'd in part, rev'd in part, 867 F.2d 47 (1st Cir.1989), cert. denied, —— U.S. ——, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989) (*McNally* was "wholly unexpected explication of the law of mail fraud."). Under these circumstances, the defendant could hardly have been expected to object to the intangible rights theory. As we noted in *United States v. Marcello* :

> Ordinarily, a habeas petitioner who raises an instructional error for the first time in a collateral attack must satisfy the cause and prejudice standard of *Wainwright v. Sykes*[6] .... It is well

---

5. The majority cites two cases decided before *Frady*, and in which a procedural default was not at issue, for the proposition that when a subsequent change of the law results in a petitioner's conviction for an act that the law no longer makes criminal, the claim is cognizable on collateral review even though the claim is neither jurisdictional nor constitutional in scope. *Davis v. United States*, 417 U.S. 333, 345 n. 15, 94 S.Ct. 2298, 2305 n. 15, 41 L.Ed.2d 109 (1974); *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805 (1979). Whatever validity this rule may have in other

contexts, the Supreme Court clearly did not believe that this rule created an exception to the cause and prejudice requirement for jury instructions on mens rea that are subsequently determined to be improper. *See Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

6. *Frady* applied the *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), cause and prejudice standard, applicable to state court habeas petitions, to § 2255 federal post-conviction review petitions. The reference to

settled in this circuit, however, that the *Sykes* claim is waived if it is not raised.... In the case at bar, the government did not raise the procedural bar, but, rather, recognized that *the defendants had cause for failing to object* to the intangible rights theory.

*United States v. Marcello*, 876 F.2d 1147, 1153 (5th Cir.1989) (emphasis added). The courts presumably did not address the question of cause in these cases because, as in *Marcello*, the government conceded the issue.

At most, the cases cited by the majority indicate some uncertainty concerning whether a petitioner must demonstrate cause and prejudice when the substantive theory on which his conviction was premised is subsequently determined to be invalid. No such uncertainty exists in the present case. Before *McNally*, the lower federal courts had interpreted the words "scheme or artifice to defraud" in the mail fraud statute, 18 U.S.C. § 1341, to include schemes to defraud the public of "intangible rights," such as the right to good government. The *McNally* Court, however, read the statute as "limited in scope to the protection of property rights." 483 U.S. at 360, 107 S.Ct. at 2881. The instant case involves mens rea instructions subsequently determined to be improper, rather than a broad invalidation of the substantive theory under which Shaid was convicted.

Even if an exception to *Frady* could be said to exist in instances where the substantive theory under which the defendant was convicted is invalidated, the Supreme Court's decision in *Frady* clearly requires a showing of cause and prejudice for improper jury instructions concerning mens rea.

The majority claims that an exception exists to the *Frady* cause and prejudice standard, but also, inconsistently, asserts that the magistrate's consideration of cause and prejudice was premature.[7] The cause and prejudice standard, however, is a threshold question that determines whether we may consider the merits of a petitioner's claim despite a procedural bar. The majority claims that the magistrate prematurely considered cause and prejudice and thus failed adequately to review the merits of Shaid's claim. The majority, apparently, would require the district court to review the merits of a petitioner's claim before considering cause and prejudice, a threshold issue that determines whether it needs to review the merits. Such reasoning is, to say the least, flawed.

The district court's denial of Shaid's § 2255 petition should be affirmed as to Shaid's § 656 claims because, as the magistrate properly concluded, Shaid failed to demonstrate cause for failing to object to the improper mens rea instructions at trial.[8] Because the majority misapplies con-

---

*Wainwright* rather than *Frady* apparently was an inadvertent error.

7. The majority states:
   We do not here review the magistrate's application of the cause and prejudice standard. We do not do so because we find that the magistrate reached the issue prematurely. The result was a failure to consider adequately Shaid's claim.
   The majority fails to explain how the magistrate could reach a threshold issue prematurely.

8. A defendant shows cause for failing to object to a jury instruction if the change in law is so novel that its legal basis was not reasonably available or foreseeable at the time of trial. *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984) (One way a petitioner can show cause is by showing that "a constitutional claim is so novel that its legal basis is not reasonably available to counsel."). In light of the law existing at the time of trial, however, Shaid should not be excused for failing to object

to the instructions concerning reckless disregard. *See Murray v. Carrier*, 477 U.S. 478, 486–87, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986) ("[M]ere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default); *Procter v. Butler*, 831 F.2d 1251, 1254 (5th Cir.), *cert. denied*, 488 U.S. 888, 109 S.Ct. 219, 102 L.Ed.2d 210 (1987) (Petitioner failed to show cause for failing to object because legal basis for objection was reasonably available. Although Supreme Court did not rule on issue until after trial, previous decisions provided sufficient basis to anticipate and object). As the majority notes, our decision on Shaid's direct appeal from his judgment first established for this circuit that reckless disregard was the proper mens rea in a § 656 case. *See United States v. Adamson*, 700 F.2d 953, 962–63 (5th Cir.) (Unit B en banc), *cert. denied*, 464 U.S. 833, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983); *United States v. Wilson*, 500 F.2d 715, 720 (5th Cir.1974), *cert.*

trolling Supreme Court precedent, and would require consideration of the merits before applying a threshold rule, I respectfully dissent.

*denied, sub nom., Levin v. United States,* 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975). Clearly, the law in the Fifth Circuit was not so well established that it excused Shaid's failure to object.