**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Orrin SHAID, Jr., Defendant–Appellant.**

**No. 88–2716.**

United States Court of Appeals,
Fifth Circuit.

Aug. 5, 1991.

Mitchell Hatchell (court-appointed), Tyler, Tex., for defendant-appellant.

Dane Smith, Asst. U.S. Atty., Bob Wortham, U.S. Atty., Tyler, Tex., Kathleen A. Felton, Tom Booth, Attys., Dept. of Justice, Crim. Div., Washington, D.C., for plaintiff-appellee.

Before CLARK, Chief Judge, POLITZ, KING, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE and EMILIO M. GARZA, Circuit Judges.

KING, Circuit Judge:

We consider this case *en banc* in order to determine whether a federal prisoner who shows the possibility of prejudice as a result of erroneous jury instructions may obtain collateral relief under 28 U.S.C. § 2255 without demonstrating cause for his failure to raise the error at trial or on direct appeal. Because we find no exception to the *Frady* cause and prejudice standard that would allow us to grant collateral relief in this case absent a showing of cause, we affirm the district court's denial of the prisoner's § 2255 motion. *See United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (applying the *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), cause and prejudice standard to § 2255 motions).

## I. BACKGROUND AND PROCEDURE

The details of Orrin Shaid Jr.'s (Shaid's) illicit banking activities can be found in *United States v. Wilson*, 500 F.2d 715, 718–20 (5th Cir.1974), *cert. denied, sub nom. Levin v. United States*, 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975) (affirming the 1973 convictions at issue in the instant case),[1] and in *United States v.*

---

**1.** In 1973, Shaid was convicted on nineteen counts of misapplication of bank funds in viola-

*Shaid,* 730 F.2d 225 (5th Cir.), *cert. denied,* 469 U.S. 844, 105 S.Ct. 151, 83 L.Ed.2d 89 (1984) (affirming his 1982 convictions in connection with another fraudulent banking scheme).[2] Briefly, the evidence at Shaid's 1973 trial showed that he conspired with a group of investors to purchase and then loot a bank by, among other things, filing false financial statements in order to obtain unsecured bank loans that were never repaid. Following his 1973 conviction, Shaid moved under 28 U.S.C. § 2255 to vacate his sentence based on a challenge to the Parole Commission Guidelines. His motion was denied.

In 1984, Shaid filed a second motion under § 2255 to vacate his 1973 sentence. After an evidentiary hearing, a magistrate recommended that relief be denied. The district court adopted the magistrate's findings and recommendations and denied relief. On appeal, a panel of this court affirmed except as to Shaid's claim that the trial court in 1973 incorrectly instructed the jury on the *mens rea* requirement for conviction under 18 U.S.C. § 656. *United States v. Shaid,* 916 F.2d 984 (5th Cir. 1990). That statute provides punishment for one who "willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver." 18 U.S.C. § 656 (1988). The trial judge instructed:

> The general nature of the requisite intent has been expressed as a reckless disregard of the bank's interests, and proof of naturally foreseeable adverse consequences has been held sufficient to

prove criminal intent. More specifically, proof that normal loan procedures were circumvented or facts concealed from the Board of Directors would be indicative of fraudulent intent. Proof of a failure to obtain insufficient collateral, proof of the repeated cashing of insufficient checks or proof of self-interest on the part of the bank officer or employee in an otherwise questionable transaction, all would be evidence of intent to injure or defraud.

Shaid contends that this instruction was improper because reckless disregard is not sufficient to show intent under the statute.

Shaid's attorney, however, did not object to this portion of the instruction either at trial or on appeal. Nevertheless, in our review of the case on direct appeal in 1974, we noted in our general discussion of the constitutionality of the instruction that "reckless disregard of the interest of a bank was, for the purpose of 'willful misapplication,' the equivalent of intent to injure or defraud." *Wilson,* 500 F.2d at 720.[3] We subsequently ruled in *United States v. Welliver,* 601 F.2d 203 (5th Cir.1979), that a defendant's reckless disregard for the interests of the bank is sufficient to satisfy the intent requirement of § 656. In 1983, however, we considered the issue *en banc* and clarified the *mens rea* requirement under § 656. *United States v. Adamson,* 700 F.2d 953 (5th Cir.1983). In *Adamson,* we concluded:

> In order to convict a defendant for willfully misapplying funds with intent to injure or defraud a bank, the government must prove that the defendant *knowingly* participated in a deceptive or fraudulent transaction. The trier of fact may

tion of 18 U.S.C. § 656; two counts of making false statements in a loan application in violation of 18 U.S.C. § 1014; six counts of making a false entry in a bank statement in violation of 18 U.S.C. § 1005; four counts of accepting a gift in exchange for procuring a bank loan for a third party in violation of 18 U.S.C. § 215; and for conspiracy with regard to this same conduct in violation of 18 U.S.C. § 371. Shaid was sentenced to eight years of imprisonment.

**2.** Shaid was convicted in 1982 of nine counts of mail fraud in violation of 18 U.S.C. § 1341, eight counts of making false statements to a

federally insured bank under 18 U.S.C. § 1014, and two counts of entering a bank with intent to commit a felony under 18 U.S.C. § 2113. Shaid was paroled on the 1973 convictions, but a detainer was lodged against him for violation of his parole as a result of his 1982 convictions and he was taken into custody on that basis. He is therefore in custody for the 1973 convictions for purposes of his § 2255 motion.

**3.** We also reasoned that "courts have generally held the gist of the offense [under § 656] is conversion of funds ... with *intent to injure or defraud the bank.*" *Id.* (emphasis added).

infer the required intent, *i.e.*, knowledge, from the defendant's reckless disregard of the interest of the bank; however, jury instructions should not equate recklessness with intent to injure or defraud. *Id.* at 965 (emphasis in original). We explicitly overruled "that portion of *United States v. Welliver* which held that the proper *mens rea* standard for § 656 was a reckless disregard of the interests of the bank." *Id.* (citation omitted). We did not overrule *Wilson*, however, reasoning that, although loosely worded, the dictum in *Wilson* meant only that willfulness can be inferred from reckless disregard of the bank's interest. *Id.* at 963.

■ Some of the language in the trial court's instruction on the *mens rea* requirement for willful misapplication of bank funds properly suggests that knowledge can be inferred from evidence of reckless disregard, but the general statement of the intent requirement appears improperly to equate knowledge with reckless disregard of the bank's interest. On review of Shaid's § 2255 motion, therefore, the magistrate assumed that this instruction was erroneous under *Adamson.*[4] Nevertheless, the magistrate recommended denial of Shaid's motion because Shaid failed to show cause for failing to raise the error at trial or on direct appeal as required by *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Shaid could not demonstrate cause for his failure to object, the magistrate reasoned, because the law concerning the proper *mens rea* requirement under § 656 was not settled

prior to Shaid's conviction.[5] Because she concluded that Shaid had not satisfied the cause prong of the test, the magistrate did not consider whether Shaid demonstrated actual prejudice.

On appeal, a panel of this court decided "that the magistrate reached the issue [of cause and prejudice] prematurely" because a "recognized exception" exists to the cause and prejudice standard when "a defendant has been convicted of a criminal act that becomes no longer criminal." *Shaid v. United States*, 916 F.2d 984, 987, 991 (5th Cir.1990).[6] The panel reasoned that the erroneous jury instructions might have allowed Shaid to be convicted on a finding of reckless disregard of the bank's interests rather than a knowing misapplication of funds and remanded for the district court to determine "whether in each questioned instance Shaid actually was convicted on a reckless disregard theory." *Id.* at 993. Because we find no exception to the *Frady* cause and prejudice standard that would allow collateral relief in this case, we affirm the district court's denial of Shaid's § 2255 motion.

## II. ANALYSIS

■ The Supreme Court has emphasized repeatedly that a "collateral challenge may not do service for an appeal." *Frady*, 456 U.S. at 165, 102 S.Ct. at 1593. After conviction and exhaustion or waiver of any right to appeal, "we are entitled to presume that [the defendant] stands fairly

---

**4.** On appeal from the district court's denial of Shaid's § 2255 motion, the 1990 panel agreed that the instruction was erroneous, reasoning that although some of the trial court's elaboration of the *mens rea* requirement might suggest that knowledge can be *inferred* from evidence of reckless disregard, the trial court's general statement of the law equated the two. *Shaid*, 916 F.2d at 990.

**5.** A change in the law amounts to sufficient cause for failing to object only if the change is so novel that its legal basis was not reasonably available or foreseeable at the time of trial. *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 2910, 82 L.Ed.2d 1 (1984); *Murray v. Carrier*, 477 U.S. 478, 486–87, 106 S.Ct. 2639, 2644–45, 91 L.Ed.2d 397 (1986) (the "mere fact that counsel

failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default"). Not only had the *mens rea* requirement not been settled prior to Shaid's conviction, the development of the improper *mens rea* requirement in the Fifth Circuit in many ways began with Shaid's case. *See Adamson*, 700 F.2d at 962–63. In addition, two other courts of appeals had stated that the *mens rea* for § 656 was knowledge. *See United States v. Docherty*, 468 F.2d 989 (2d Cir.1972); *United States v. Howard*, 95 F.2d 813, 816 (4th Cir. 1938).

**6.** The panel majority, however, did not take exception to the district court's finding that Shaid failed to show cause for failing to object.

and finally convicted." *Id.* at 164, 102 S.Ct. at 1592. A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude, *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), and may not raise an issue for the first time on collateral review without showing both "cause" for his procedural default, and "actual prejudice" resulting from the error.[7] *Frady,* 456 U.S. at 168, 102 S.Ct. at 1594. This cause and actual prejudice standard presents "a significantly higher hurdle" than the "plain error" standard that we apply on direct appeal.[8] *Id.* at 166, 102 S.Ct. at 1593. We apply this rigorous standard in order to ensure that final judgments command respect and that their binding effect does not last only until "the next in a series of endless postconviction collateral attacks." *Id.* at 165–66, 102 S.Ct. at 1593.

■ A defendant must meet this cause and actual prejudice test even when he alleges a fundamental constitutional error. *Murray v. Carrier,* 477 U.S. 478, 493, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) (applying the test to fundamental defects affecting the court's truth finding function). The Court has held that the cause and prejudice standard applies to inadvertent attorney errors as well as deliberate tactical decisions, *Smith v. Murray,* 477 U.S. 527, 533, 106 S.Ct. 2661, 2665, 91 L.Ed.2d 434 (1986); to racial discrimination in the composition of the grand jury, *Davis v. United States,* 411 U.S. 233, 242–45, 93 S.Ct. 1577, 1582–84, 36 L.Ed.2d 216 (1973); and to claims that may affect the truth finding function of the trial, *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982). The Court recently demonstrated its continued commitment to this test by requiring its use in the context of abuse of the writ. *McCleskey v. Zant,* —— U.S. ——, 111 S.Ct. 1454, 1468–71, 113 L.Ed.2d 517 (1991).

In an "extraordinary case," however, "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent," the Supreme Court has recognized a narrow exception to the cause and prejudice test. *See Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649. The Supreme Court, however, has not yet found an appropriate case for the application of this exception, and it has emphasized repeatedly that this exception is limited to "extraordinary" cases involving "manifest miscarriage[s] of justice" that would result in the continued incarceration of one actually innocent of the offense. *See, e.g., Smith v. Murray,* 477 U.S. at 537, 106 S.Ct. at 2668; *Murray v. Carrier,* 477 U.S. at 496, 106 S.Ct. at 2649.

Shaid does not contend that he is "actually innocent" of the crime, however, and does not question the sufficiency of the evidence on intent or offer new evidence demonstrating his innocence. Rather, he asserts that the district court should not have applied the cause and prejudice test because the trial court's *mens rea* instruction might have allowed him to be convicted on less than a finding of actual knowledge. In essence, he argues that an exception to the cause and prejudice standard exists that would allow collateral relief when an instructional error on *mens rea* might result in an incorrect verdict.

Shaid relies principally upon language in *Frady* as support for this exception to the cause and prejudice test. Just as in the instant case, the court of appeals in *Frady* decided subsequent to Frady's conviction that the *mens rea* instructions given at his trial were improper. The instructions incorrectly equated intent with malice by stating that "a wrongful act ... intentionally done ... is therefore done with malice aforethought." *See Frady,* 456 U.S. at 158, 102 S.Ct. at 1589. The trial court also incorrectly instructed the jury that "the law infers or presumes from the use of

---

**7.** If the error is not of constitutional or jurisdictional magnitude, the defendant must show that the error could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of justice. *United States v. Capua,* 656 F.2d 1033, 1037 (5th Cir.1981).

**8.** A failure to object to an error at trial precludes review on direct appeal unless the defendant demonstrates "[p]lain errors or defects affecting substantial rights." Fed.R.Crim.P. 52(b).

such weapon in the absence of explanatory or mitigating circumstances the existence of the malice essential to culpable homicide." *Id.* Frady did not object to the intent instructions at trial or on direct appeal, challenging them for the first time in a § 2255 motion. He asserted that the erroneous instructions relieved the government of its burden of proving malice, an element of the crime of murder. Thus, he argued, he might have been convicted of a crime of which he was not guilty. *Id.* at 162, 169–70, 102 S.Ct. at 1591, 1595–96.

The Supreme Court reviewed Frady's claim under the cause and prejudice standard. Drawing from its decision in *Henderson v. Kibbe*, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977), another case in which a habeas petitioner challenged jury instructions to which he had not objected at trial, the Court repeated that a petitioner can demonstrate prejudice resulting from such an instruction only if " 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' " and not merely because " 'the instruction is undesirable, erroneous, or even universally condemned.' " *Frady*, 456 U.S. at 169, 102 S.Ct. at 1595 (quoting *Henderson*, 431 U.S. at 154, 97 S.Ct. at 1736, which in turn quoted *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). The Court stressed that Frady bore the burden of showing not just the "possibility of prejudice as a result of the instructional error," but an "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170, 102 S.Ct. at 1596. Applying these standards, the Court determined that Frady failed to satisfy the prejudice prong of the cause and prejudice test. The Court, therefore, refused relief without addressing the cause prong of the test. *Id.* at 170–74, 102 S.Ct. at 1595–97.

Shaid, however, relies upon a passage in which the Supreme Court explains why Frady failed to satisfy the actual prejudice requirement. The Court states:

> [W]e emphasize that this would be a different case had Frady brought before the District Court affirmative evidence indicating that he had been convicted wrongly of a crime of which he was innocent. But Frady, it must be remembered, did not assert at trial that he and Richard Gordon beat Thomas Bennett to death without malice. Instead, Frady claimed he had nothing whatever to do with the crime. The evidence, however, was overwhelming, and Frady promptly abandoned that theory on appeal. [Citation omitted]. Since that time, Frady has never presented colorable evidence, even from his own testimony, indicating such justification, mitigation, or excuse that would reduce his crime from murder to manslaughter.

*Id.* at 171, 102 S.Ct. at 1596. Shaid argues that, unlike Frady, he contended at trial that he lacked the proper *mens rea* and therefore may have been prejudiced by the improper *mens rea* instructions given at his trial. Shaid implies that the Supreme Court would have reviewed Frady's claim, even if he could not show cause for his procedural default, if Frady had been able to show actual prejudice.

The context in which this passage occurs, however, indicates that the Supreme Court was applying the cause and prejudice test rather than eliminating the cause prong for cases in which the defendant demonstrates prejudice. Prior to the passage Shaid relies upon, the Supreme Court made clear that both "cause" and "actual prejudice" must be shown, and that it did not have to reach the "cause" prong only because Frady had not shown prejudice. It stated:

> [T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) "cause" excusing his double procedural default, and (2) "actual prejudice" resulting from the errors of which he complains. In applying this dual standard to the case before us, we find it unnecessary to determine whether Frady has shown cause, because we are confident he suffered no actual prejudice of a degree sufficient to justify collateral relief 19 years after his crime.

*Id.* at 168, 102 S.Ct. at 1594. Frady's case would have been different, the Supreme

Court reasoned, if Frady had argued at trial that he lacked the proper *mens rea* (rather than that he did not participate in the crime) because he then might have been able to establish prejudice as a result of the erroneous *mens rea* instructions.[9]

In essence, Shaid argues that he need not show cause for his procedural default because he alleges the sort of instructional error that might result in an unreliable verdict. The Supreme Court, however, has stated unequivocally that both cause and prejudice must be shown even for important instructional errors affecting the reliability of the court's factual determinations. In *Carrier*, for example, the Court stated:

> [O]ur rejection in *Engle* of the contention advanced today—that cause need not be shown if actual prejudice is shown—is fully applicable to constitutional claims that call into question the reliability of an adjudication of guilt.

477 U.S. at 495, 106 S.Ct. at 2649.

In *Engle*, the petitioners sought collateral relief on the basis of an unobjected to instruction that the Supreme Court assumed unconstitutionally placed the burden of proof on the defendant to negate an element of the offense. The Supreme Court did not consider whether "actual prejudice" existed because it concluded "that these respondents lacked cause for their default," rejecting the petitioners' claim that "their prejudice was so great that it should permit relief even in the absence of cause." 456 U.S. at 134 n. 43, 102 S.Ct. at 1575 n. 43. The *Engle* Court clearly rejected the argument that the cause and prejudice standard should not apply to instructional errors that relate to guilt or innocence, expressly refusing to limit the test "to cases in which the constitutional error did not affect the truth finding function of the trial." [10] *Id.* at 129, 102 S.Ct. at 1572. In so doing, the Court expressed confidence "that victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard." *Id.* at 135, 102 S.Ct. at 1576.

The Court once again applied these principles in *Murray v. Carrier*. In *Carrier*, the Court specifically rejected the suggestion that the cause and prejudice standard should be relaxed in favor of a balancing test when the claim asserted is one of "fundamental importance," and affirmed the principle, stated in *Engle*, that both the cause and prejudice prongs of the test must be met even for "constitutional claims that call into question the reliability of an adjudication of legal guilt." *Carrier*, 477 U.S. at 495, 106 S.Ct. at 2649.

In *Dugger v. Adams*, 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989), the Court repeated its statement from *Carrier* that "where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.* at 412 n. 6, 109 S.Ct. at 1217 n. 6 (quoting *Carrier*, 477 U.S. at 496, 106 S.Ct. at 2649). The Court did not find a miscarriage of justice that would excuse compliance with the cause and prejudice test, however, when the defendant failed to object to erroneous jury instructions concerning the jury's role in imposing the death penalty. *Id.* The Court explained that it did not consider the actual innocence exception as including any case in which the alleged error is the kind that might affect the accuracy of a death sentence.

---

**9.** We note that the Supreme Court has not cited *Frady* as authority for an exception to the cause and prejudice test even in those cases in which the Court has discussed the *Carrier* actual innocence exception. *See Dugger v. Adams*, 489 U.S. 401, 412 n. 6, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989); *Carrier*, 477 U.S. at 495–96, 106 S.Ct. at 2649; *Smith v. Murray*, 477 U.S. at 537–38, 106 S.Ct. at 2667–68.

**10.** *Engle*, decided the same day as *Frady*, was a § 2254 case. The "cause and actual prejudice" requirement, however, is the same in both § 2254 and § 2255 cases. *Frady* expressly relies on *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), each of which are § 2254 cases. *See Frady*, 456 U.S. at 167, 102 S.Ct. at 1594. In addition, the Court states that there is "no basis for affording federal prisoners a preferred status when they seek postconviction relief." *Id.* at 166, 102 S.Ct. at 1593.

*Id.* Such an approach, the Court remarked, would turn the "extraordinary" case it had in mind when it spoke of a fundamental miscarriage of justice "into an all too ordinary one." *Id.*

Shaid also relies on certain cases in which courts have granted collateral relief to defendants convicted under the intangible rights theory of mail or wire fraud invalidated by the Supreme Court in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). These cases are of limited precedential value in the present context, however, because the courts in these post-*McNally* cases concluded they did not have to resort to an exception to the cause and prejudice test in order to grant collateral relief. The law was regarded as so well settled before *McNally* that mail fraud could be premised on an intangible rights theory that the courts in these cases had no difficulty finding cause for the defendant's failure to object. *See Callanan v. United States*, 881 F.2d 229, 231 (6th Cir.1989) (stating that it was well settled before *McNally* in the 6th and every other circuit that mail fraud could be based on intangible rights theory); *United States v. Ochs*, 842 F.2d 515, 521 (1st Cir.1988) ("[*McNally* ] was, without doubt, a departure from the law of every court of appeals—including this one—to consider the issue of intangible rights mail fraud prosecutions."). In fact, these post-*McNally* cases provide an excellent illustration of the Supreme Court's observation that most victims of fundamental injustice will be able to meet the cause and prejudice standard. *See Carrier*, 477 U.S. at 495–96, 106 S.Ct. at 2649; *Engle*, 456 U.S. at 135, 102 S.Ct. at 1576.

■ Shaid also relies upon *Davis v. United States*, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), and *United States v. Addonizio*, 442 U.S. 178, 186–87, 99 S.Ct. 2235, 2241, 60 L.Ed.2d 805 (1979), and observes that some of the post-*McNally* decisions cite to *Davis* for the proposition that an argument could be made that the defendants in these post-*McNally* cases could have obtained collateral relief even without establishing cause for their procedural de-

fault because they were convicted on the basis of conduct that is no longer a crime. *See United States v. Shelton*, 848 F.2d 1485, 1490 (10th Cir.1988); *United States v. Stoneman*, 870 F.2d 102 (3d Cir.1989). *Davis* and *Addonizio*, however, which were decided before *Frady* and which do not involve procedural defaults, stand for the principle that exceptional circumstances may exist in which a court may exercise its equitable power to grant collateral relief under § 2255 to prevent the continued incarceration of one actually innocent. *See Davis*, 417 U.S. at 346–47, 94 S.Ct. at 2305; *Addonizio*, 442 U.S. at 186–87, 99 S.Ct. at 2241. To the extent that this principle is applicable to procedural default cases, it has been encompassed by the *Carrier* actual innocence exception. In addition, the defendants in these post-*McNally* cases may have demonstrated actual innocence or had a stronger argument than Shaid that they were convicted of conduct that was no longer a crime because *McNally* involved the broad invalidation of an entire substantive theory of conduct constituting mail fraud. In *Adamson*, on the other hand, we merely clarified the precise level of intent required for conviction under § 656.

We can only speculate whether the post-*McNally* defendants could have obtained collateral relief had they not been able to demonstrate cause for failing to object to the intangible rights theory of mail or wire fraud. We can be sure, however, that the Supreme Court requires application of the cause and prejudice standard to the type of improper *mens rea* instructions at issue in the instant case. In *Frady*, the Supreme Court applied the cause and prejudice test to improper *mens rea* instructions, and the *Engle* and *Carrier* decisions establish that the cause and prejudice standard applies to instructional errors that may affect the reliability of the court's truth finding function. *See Engle*, 456 U.S. at 129, 102 S.Ct. at 1572; *Carrier*, 477 U.S. at 495, 106 S.Ct. at 2649.

■ Because Shaid has not shown cause for his procedural default, he must demonstrate that the improper *mens rea* instruction at his trial "probably resulted in the

conviction of one who is actually innocent" in order to be entitled to collateral review. *Carrier*, 477 U.S. at 496, 106 S.Ct. at 2649. Shaid's argument that the jury may have misinterpreted the trial court's instruction on *mens rea*, however, suggests only the *possibility* that he was prejudiced by the erroneous instruction.[11] Shaid has not challenged the sufficiency of the *mens rea* evidence at his trial, and he has not presented new evidence indicating his actual innocence. A mere possibility of prejudice will not satisfy the actual prejudice prong of the cause and prejudice test, much less demonstrate actual innocence. *Frady*, 456 U.S. at 170, 102 S.Ct. at 1596 (a defendant must "shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions") (emphasis in original).[12]

The Supreme Court consistently has employed the cause and prejudice test, even for "constitutional claims that call into question the reliability of an adjudication of guilt," expressing its confidence that the cause and prejudice standard is adequate to protect against miscarriages of justice. *Carrier*, 477 U.S. at 495–96, 106 S.Ct. at 2649. Although the Supreme Court has acknowledged a narrow exception to the cause requirement for "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent," Shaid's challenge to the *mens rea* instruction at his trial suggests only the possibility of prejudice, not actual innocence. *Id.* at 496, 106 S.Ct. at 2649. Review of Shaid's claim without a showing of cause, therefore, would undermine the proper finality of criminal convictions. It would also eviscerate the cause prong of the cause and prejudice test, a standard designed to be significantly more difficult than the plain error test that we employ on direct appeal.

## III. CONCLUSION

Because Shaid failed to demonstrate cause for his procedural default, and because Shaid has not demonstrated that failure to review his claim will result in the continued incarceration of one probably innocent of the crime, the district court's denial of Shaid's 28 U.S.C. § 2255 motion must be affirmed.

AFFIRMED.

JERRE S. WILLIAMS, Circuit Judge, with whom POLITZ, Circuit Judge, joins dissenting:

The intricacies of the opinion for the Court in this case tend to conceal that the

---

**11.** Shaid's jury may have interpreted the trial court's instruction properly as permitting an inference of intent from conduct showing a reckless disregard. The instruction was erroneous, however, because it was susceptible to an incorrect interpretation, not because such an interpretation was inevitable. Even if the jury interpreted the instruction incorrectly, however, the jury nevertheless may have convicted Shaid based on a finding of knowledge, the proper *mens rea*, rather than reckless disregard. It considered evidence that Shaid participated in a scheme to provide others with ready credit in exchange for their financial backing, and it convicted him of making false statements, accepting gratuities in exchange for procuring a loan, and forging promissory notes in connection with the bank loans. Even if the jury instructions permitted the jury to convict on the basis of reckless disregard, it does not follow that the jury found that Shaid merely acted recklessly. On the basis of such evidence, the jury may well have inferred that Shaid knowingly misapplied bank funds rather than merely acted in reckless

disregard of the bank's interest. The panel majority in *United States v. Shaid*, we note, did not find that Shaid had been convicted on the basis of an improper *mens rea*. Rather, it found only the possibility that Shaid may have been convicted on such a basis and remanded to the district court to determine if "Shaid actually was convicted on a reckless disregard theory." 916 F.2d at 993.

**12.** In fact, a mere possibility of prejudice generally will not satisfy even the "plain error" test. We have defined "plain error" as "error which, when examined in the context of the entire case, is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Lopez*, 923 F.2d 47, 50 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2032, 114 L.Ed.2d 117 (1991). Generally, we require a defendant to show a substantial probability that the error materially affected the verdict under the plain error standard before we will review the claim.

case is relatively straightforward, controlled step by step by established law. The most unusual part of the majority opinion is the conclusion that the established law in decisions of the United States Supreme Court is not to be applied because the Court has not had the occasion to follow the law very often. I dissent.

The direct legal reasoning which controls this case can be readily stated:

1. Petitioner Shaid clearly has an established criminal record for engaging in offenses which can be summarized as bank fraud and misappropriation of funds. His first group of convictions was in 1973. His other convictions for bank fraud under a wholly different set of circumstances occurred in 1982. Due to the earlier convictions, Shaid received an enhanced sentence for the 1982 convictions.

2. In 1983 our Court determined that we had been in error in applying 18 U.S.C. § 656 regarding misapplication of bank funds. We had held properly that a conviction would lie with proof of a knowing participation in a deceptive or fraudulent transaction. But we also had held in error that the statute was violated when there was proof only of a "reckless disregard" of the interests of the bank. The clear holding was that *mens rea* was required, an intentional deceptive or fraudulent act. *United States v. Adamson*, 700 F.2d 953 (5th Cir.) (Unit B En Banc), *cert. denied*, 464 U.S. 833, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983).

3. It is the established law that when a conviction is based upon conduct which no longer constitutes a crime, such a conviction no longer stands even though it occurred before the law recognized that the conduct was not a crime. *United States v. Addonizio*, 442 U.S. 178, 187, 99 S.Ct. 2235, 2241, 60 L.Ed.2d 805 (1979) (not to set aside a conviction in such circumstances would be a "complete miscarriage of justice").

4. The clearly established general rule is that on a § 2255 motion, a convicted defendant raising trial errors where no contemporaneous objection was made must meet the requirement of a showing of cause as to why the objection was not made at trial and also the defendant must show actual prejudice resulting from the errors of which is complaint. *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1982). Shaid made no specific contemporaneous objection. There is a recognized exception to this general principle, however, which the Court itself in the *Frady* case recognized. The Court said that it was distinguishing the case in which the accused brought before the district court affirmative evidence indicating that he had been convicted wrongly of a crime of which he was innocent. *Frady*, 456 U.S. at 171, 102 S.Ct. at 1596. This is Shaid's situation. He did contend at trial and also before the district court in the § 2255 proceeding that he did not intend to commit a crime with respect to certain of the charges under § 656 because he did not have the requisite intent to misapply the bank's funds.

5. The exception to the requirement of meeting the cause and prejudice standard continues to be well established. In *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986), the Court said: "[W]here a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for procedural default." It should be noted that this case is four years after the *Frady* case. Further, this statement from *Carrier* was quoted again by the Supreme Court in *Dugger v. Adams*, 489 U.S. 401, 412 n. 6, 109 S.Ct. 1211, 1217, 103 L.Ed.2d 435 (1989).

So it is that under this straight line of reasoning, using the law as established by the United States Supreme Court, Shaid did not need to meet a cause and prejudice standard because his conviction for a crime that does not exist was used to enhance his punishment for later offenses.

The remedy is narrow, as the panel opinion ordered. The case should be remanded to the district court to evaluate what counts in the 1973 conviction were counts under which Shaid was improperly convicted for engaging in non-criminal conduct.

Shaid did not contest on *mens rea* grounds all nineteen counts of misapplication of funds of which he was found guilty. Thus, the district court must review the record to determine which counts raised a legitimate concern as to whether Shaid had the requisite knowledge and intent to violate § 656. The court will need to make findings as to which of Shaid's § 656 convictions in 1973 rest only on evidence of a reckless disregard for the interests of the bank.

This is the legal scenario of Shaid's case. But the opinion of the Court sets out to create an intricate and multifaceted obstacle course to deny Shaid his proper protection under the Constitution and laws of the United States.

To begin the analysis of the obstacle course it is proper to point out that no specific objection to the charge in question was made. The attorney requested a jury charge limiting the offense to an intention to misappropriate funds, and made a general objection that that charge was not made to the jury. But there is no specific objection to the critical charge. Also the opinion for the Court concedes, as it must, that the charge did improperly define the offense since it included as culpable a reckless disregard for the bank's interests by equating a reckless disregard with the requisite requirement of intent under § 656.

The United States Government in defending against this § 2255 motion did not move, after the decision of the panel following this straightforward line of reasoning, for either a rehearing or a rehearing en banc. The government seemingly conceded the correctness of the result, or, at least, that it was not profitable to undertake a rehearing. But the Court took it upon itself to assume en banc jurisdiction and hold otherwise. Of course, this Court under its responsibilities to the law had the right to do that without an objection from the government. But it is perhaps a gentle irony that while we recognize a powerful effect of the failure to object to the instruction, we do not find any significance in the lack of governmental objection to the panel holding.

The Court treats the controlling instruction defining a non-crime as a crime as merely an erroneous instruction which invokes the cause and prejudice standard of the *Frady* case and denies the exception for the out and out conviction for non-crimes. The Court relies upon the facts of *Frady* to conclude that it is the same kind of case as Shaid's case. In that case the instructions incorrectly equated intent with malice in a homicide case and also inferred from the use of a weapon the existence of malice. The critical difference in the facts of that case was pointed out by the Court itself in *Frady* in the passage in which it recognizes the exception. The Court said:

> [W]e emphasize that this would be a different case had Frady brought before the district court affirmative evidence indicating that he had been convicted wrongly of a crime of which he was innocent. But Frady, it must be remembered, did not assert at trial that he ... beat Thomas Bennett to death without malice. Instead, he claimed he had nothing whatever to do with the crime.

(*Frady*, 456 U.S. at 171, 102 S.Ct. at 1596.) In other words, Frady claimed alibi. Obviously, under those circumstances the claim was simply the claim of an erroneous instruction which increased the level of the crime. It had nothing to do with a claim that there had been no crime. In contrast, in Shaid's case the issue is whether a crime at all had been committed. Shaid properly asserted that it had not. Shaid's case precisely fits the definition of the quotation from *Frady*: "Affirmative evidence indicating that he had been convicted wrongly of a crime of which he was *innocent.*" *Frady*, 456 U.S. at 171, 102 S.Ct. at 1596 (emphasis added).

In *Murray v. Carrier*, as quoted earlier, the Court confirmed in 1986 the recognition of the exception of innocence from any *Frady* analysis. 477 U.S. at 496, 106 S.Ct. at 2649. Again, the facts of *Carrier* itself and of the *Engle* case, quoted extensively in the majority opinion because of reference to it in *Carrier*, did not involve criminal convictions for a non-crime. In *Carrier*, there was a procedural default on discovery. In *Engle*, the issue was an errone-

ous instruction concerning burden of proof. It should be emphasized again that neither one of these involved the alternative of a conviction of a non-crime as defined by the court in its instructions to the jury. In both of those instances, the issue was a procedural error.

In *Dugger v. Adams*, 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989), the Supreme Court again confirmed the principle of protecting actual innocence. *Id.* 489 U.S. at 1217, 109 S.Ct. at 1217 n. 6. Again in *Dugger*, the issue was not innocence but was simply the issue of instruction to the jury as to its role in assessing capital punishment in a murder case.

The opinion for the Court asserts that "[t]he Supreme Court, however, has not yet found an appropriate case for the application of this exception,...." The simple truth is that the cases which did not apply the exception are cases that do not involve criminal conviction for a non-crime.

Contrary to the statement in the opinion of the Court, we do have clear and strong authority from the Supreme Court in actual conviction in non-crime cases. This authority does not require showing of cause and prejudice. The Supreme Court in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), granted relief on appeal to defendants convicted under an erroneous theory of mail and wire fraud. *McNally* was then followed by collateral attack cases under § 2255 in which such convictions were set aside without requiring a showing of cause or prejudice. *E.g., United States v. Bruno*, 903 F.2d 393, 394 (5th Cir.1990); *Callanan v. United States*, 881 F.2d 229, 231 (6th Cir.1989). *McNally* and the other cases, precisely on point, stand firm and unassailed.

Yet, the opinion for the Court undertakes to distinguish *McNally* and the cases following it by stating that they involved a "broad invalidation of an entire substantive theory of conduct constituting mail fraud." In contrast, says the Court, *Adamson* "merely clarified the precise level of intent required for conviction under § 656." The distinction attempted has no justification stated in *McNally* nor its progeny. In

*McNally* and in *Shaid*, one of two parts of the definition of the crime was held to be invalid. The other part remained valid.

It is to these extreme and unwarranted characterizations that I dissent most strongly. In both cases an accused was convicted of a crime which does not exist. To call *Adamson* "a mere clarification of the precise level of intent" moves far afield from the legal reality of the *Adamson* case and those that follow. It is like calling a hurricane merely a fresh breeze. It is a classic rationalization. Requirement of intent to commit an offense, *mens rea*, is one of the most stringent requirements in the law. To characterize that requirement as involving only a "clarification of the precise level of intent required" when the statute does not cover conduct based upon reckless disregard for the interests of the person allegedly wronged has an Alice in Wonderland quality which this Court should not accept.

I remind the Court that this case is not an instance of allowing a criminal to go free. It is a narrow decision only to inquire as to what extent conviction for non-crimes resulted in the enhancement of sentence. The most that is required is a resentencing to avoid augmentation of a criminal sentence by conduct which was not criminal. This case was not worthy of rehearing or an en banc hearing, as the government itself recognized in its failure to file motions to accomplish rehearing. Instead, this Court took upon itself to establish by a tortured logic contrary to the stated law of the Supreme Court that a criminal conviction for a non-crime is to be treated as no more than an instance of a procedural error by erroneous instruction to a jury. I must dissent from this debasement and abandonment of a principle about as fundamental as can be found in our Constitution.

A person cannot be held accountable criminally when he or she has not committed a crime. The Supreme Court has established the law that a Court cannot escape the enforcement of this constitutional right by finding a procedural default in failure to object. I find it chilling, indeed, that this Court refuses to accept the established law

and instead mounts a many faceted undertaking to avoid applying the established principle of law, and most surprisingly by a large majority of the Court. We may not feel sympathy at all for convicted criminals. But the moment we stop protecting critical constitutional rights of those charged with crime and punished for crime, we put at risk every citizen in the United States.