**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

**No. 95-60163**
**Summary Calendar**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**

**JAMES PORTER,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
For the Northern District of Mississippi
(3:93 CV 196 (1:92 CR 131))
_____

( August 30, 1995 )

Before DAVIS, BARKSDALE and DeMOSS, Circuit Judges.

PER CURIAM:[*]

<u>BACKGROUND</u>

James J. Porter pleaded guilty pursuant to a plea agreement which provided that Porter would waive indictment, plead guilty to one count of conspiracy to possess 19 grams of crack cocaine with

---

[*] Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

intent to distribute, and provide truthful information and testimony. The government agreed not to prosecute Porter for any related or similar offenses. The agreement expressly provided that there was no agreement as to what punishment or sentence the court may impose and that both parties agreed that punishment would be entirely in the court's discretion.

At the guilty plea hearing, the government filed a one-count information charging that "from about June 1992 to August 7 of 1992" Porter conspired with "other persons known and unknown to possess with intent to distribute approximately 19 grams of cocaine base which is crack cocaine". Porter waived a formal reading of the information. The court asked Porter if he had in fact committed the offense, and Porter replied that he had. The court then asked the government to state the factual basis for the charge. The government stated that:

> [B]eginning around June 1992 James Porter negotiated to supply Joe Smith[,] Jr., a drug dealer in Columbus, Mississippi, with approximately 19 grams of cocaine base for distribution in the Columbus, Mississippi[,] area.
>
> Smith placed telephone calls to Mr. Porter, who is located in Meridian. Called from a place in the Columbus, Mississippi[,] area to negotiate the purchase. Later Smith agreed to cooperate with the agent, and on August 7, 1992, a controlled purchase of 19 grams of cocaine base was made from Mr. Porter. . . .

The court determined that the factual basis was sufficient, and Porter pleaded guilty. The court informed Porter that a presentence report (PSR) would be prepared and that he would be afforded the opportunity to read the PSR. The court released

2

Porter with the government's concurrence.  The prosecutor advised the court that Porter had been cooperating "in what we think is going to be some significant investigations".

At the sentencing hearing, the court asked Porter's counsel whether he had the opportunity to read the PSR and review it with his client.  Porter's counsel responded that he had.  The court asked whether there were any unresolved questions, and counsel stated that there were none.  The court also asked Porter whether he had anything to say to mitigate his punishment.  Porter's answer was:  "No, sir, Your honor."

Porter's counsel argued to the court for leniency in sentencing Porter, stating that Porter had taken it upon himself to cooperate.  The government confirmed that Porter had cooperated, but indicated that his cooperation had not "risen to the level of substantial assistance".  The prosecutor suggested that there might be an opportunity for a Rule 35 motion after sentencing if the court allowed Porter to report voluntarily.  The court explained to Porter that if the government was not in a position to make a departure pursuant to U.S.S.G. § 5K1.1, the court was bound by the mandatory minimum sentence.  The court added that the government could make a Rule 35 motion within one year for substantial assistance rendered during that period.  After sentencing Porter, the court allowed him sixty days to report "to give him an opportunity to complete the matter of cooperation with the authorities".

Porter did not appeal, but filed the instant motion pursuant to 28 U.S.C. § 2255. Porter alleged that the plea agreement was not supported by a sufficient factual basis in violation of Fed. R. Crim. P. 11(f). Specifically, he asserted that because a government informant cannot be a coconspirator, he could not be guilty of the offense charged. He also alleged that he was denied effective assistance of counsel because his lawyer failed to investigate whether Smith was an informant, and failed to inform Porter that the coconspirator argument was an affirmative defense. Last, Porter alleged that the government breached the plea agreement. According to Porter, he had an oral agreement with the government that it would seek a downward departure if he cooperated, and he fulfilled his end of the bargain but the government did not.

The district court denied the motion. After Porter filed notice of appeal, the court granted his motion to proceed <u>in forma pauperis</u> (IFP).

OPINION

In reviewing the denial of a § 2255 motion, this Court reviews the district court's factual findings for clear error, and questions of law are reviewed <u>de</u> <u>novo</u>. **United States v. Gipson**, 985 F.2d 212, 214 (5th Cir. 1993).

Porter raises his district-court argument that the guilty plea was not supported by a factual basis in violation of Rule 11(f). The district court, in rejecting this claim, determined that:

> the factual basis presented both at the plea
> hearing and in the presentence report -- to

4

which Porter never objected -- "was sufficiently specific to allow the court to determine that [Porter's] conduct was within the ambit of that defined as criminal," **United States v. Oberski**, 734 F.2d 1030, 1031 (5th Cir. 1984), and reveals that the charged conspiratorial conduct occurred <u>before</u> the co-conspirator began cooperating with the government, not after. . . .

Porter argues that he was not presented with the PSR until after he was incarcerated and that, had he seen it before, he would have objected to it. He raises whether, because he did not object to the PSR, the district court violated Fed. R. Crim. P. 32. Porter also maintains that the PSR could not supply a factual basis because it contained only hearsay statements by Smith, and there was no evidence showing that the conspiracy was underway before Smith began cooperating with the government.

A defendant who has plead guilty or has been convicted and has exhausted his right to appeal is presumed to have been "`fairly and finally convicted'". **United States v. Shaid**, 937 F.2d 228, 231-32 (5th Cir. 1991) (en banc) (citation omitted), <u>cert. denied</u>, 502 U.S. 1076 (1992). "[A] `collateral challenge may not do service for an appeal.'" **Id**. at 231 (quoting **United States v. Frady**, 456 U.S. 152, 165 (1982)). Therefore, a defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show "both `cause' for his procedural default, and `actual prejudice' resulting from the error". **Id**. at 232 (quoting **Frady**, 456 U.S. at 168). The only exception to the cause and prejudice test is the "extraordinary case . . . in which a constitutional violation has probably resulted in the conviction

5

of one who is actually innocent".  **Id**. at 232 (internal quotations and citation omitted).

Allegations of error which are not of constitutional or jurisdictional magnitude which could have been raised on direct appeal may not be asserted on collateral review in a § 2255 motion. **United States v. Capua**, 656 F.2d 1033, 1037 (5th Cir. 1981).  Such errors will be considered only if they could not have been raised on direct appeal, and if condoned, would result in a complete miscarriage of justice.  **Shaid**, 937 F.2d at 232 n.7.

Although a failure to comply with the formal requirements of Rule 11 is neither constitutional nor jurisdictional and can and should be raised on direct appeal, in some cases Rule 11 violations can have a constitutional dimension bearing on the knowing and voluntary nature of the guilty plea.  Therefore, to be cognizable on § 2255, the movant must show that the alleged error resulted in a "complete miscarriage of justice" or in a proceeding "inconsistent with the rudimentary demands of fair procedure". **United States v. Timmreck**, 441 U.S. 780, 783-84 (1979); **United States v. Prince**, 868 F.2d 1379, 1385 (5th Cir.), cert. denied, 493 U.S. 932 (1989).

Porter submits no reason why the Rule 11 issue was not raised on direct appeal.  The plea colloquy shows that both the information and the government's recitation of the factual basis for the plea argument stated that the conspiracy began in June. The factual basis specifically provided that Smith began cooperating after he and Porter began negotiations.  Porter did not

6

object to either the information or the government's factual basis. Thus, he does not make the requisite showing of a miscarriage of justice which would entitle him to § 2255 relief on this claim.

Porter's argument that the district court violated Rule 32 because the court did not permit him to comment on the PSR was not raised in the district court. "[I]ssues raised for the first time on appeal are not reviewable by this court unless they involve purely legal questions and failure to consider them would result in manifest injustice." **Varnado v. Lynaugh**, 920 F.2d 320, 321 (5th Cir. 1991) (internal quotation and citation omitted). Whether the court permitted Porter to comment on the PSR is not a purely legal issue, and this Court will not consider it.

Porter also argues that the district court did not apply the sentencing guidelines correctly because he was sentenced to 60 months of imprisonment when his base offense level and criminal history category called for 46 to 57 months of imprisonment. Porter did not raise this argument in the district court. As noted above, "[I]ssues raised for the first time on appeal are not reviewable by this court unless they involve purely legal questions and failure to consider them would result in manifest injustice." **Varnado**, 920 F.2d at 321.

Whether the district court correctly sentenced Porter is a legal question. See **United States v. Suarez**, 911 F.2d 1016, 1018 (5th Cir. 1990) (the district court's purely legal application of the guidelines is subject to de novo review). No miscarriage of justice will occur, however, if the court does not review this

argument. Porter was sentenced to 60 months of imprisonment, the statutory minimum. 21 U.S.C. §§ 841 and 846 (West 1981 & Supp. 1995). The guidelines provide that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence". § 5G1.1(b); see **United States v. Schmeltzer**, 960 F.2d 405, 408 (5th Cir.) ("statutorily mandated sentences are incorporated into the Sentencing Guidelines and prevail over the guidelines when in apparent conflict"), cert. denied, 113 S. Ct. 609 (1992).

Porter asserts that the plea agreement led him to believe that he was entitled to a downward departure and that the government breached the agreement. In rejecting this claim, the district court reasoned that under § 5K1.1, the government has the power, but not the duty, to file a motion for a downward departure when a defendant has "`substantially assisted'". Further, the court noted that the written plea agreement contained no such agreement and that Porter repeatedly advised the court that the terms of the plea were encompassed by the written agreement.

In his reply brief, Porter points out that at sentencing the government stated that his assistance "hasn't risen to the level of substantial assistance". Porter argues that the government, in this statement, alludes to its oral promise that it would seek a departure. Porter also argues that the government's statement regarding his release on bond that he had been "assisting the FBI and the Mississippi Bureau of Narcotics in what was going to be

8

significant investigations" is evidence that there was an oral agreement for a departure.

Porter contends that he attempted to provide "substantial assistance," but that the federal agents repeatedly cancelled prearranged meetings, and that he did not have the means to coordinate his assistance because his car had been seized as a result of his arrest. He further maintains that in spite of these obstacles, he nevertheless provided information that led to the arrest of two suspects.

"[W]hen a guilty plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." **United States v. Valencia**, 985 F.2d 758, 761 (5th Cir. 1993) (internal quotations and citation omitted). Porter, as the party alleging a breach of the plea agreement, bears the burden of proving the underlying facts establishing a breach by a preponderance of the evidence. **United States v. Garcia-Bonilla**, 11 F.3d 45, 46 (5th Cir. 1993). To determine whether the government breached the plea agreement, the court must consider "whether the government's conduct is consistent with the parties' reasonable understanding of the agreement". **Id**. (internal quotations omitted). This inquiry is a question of law to be reviewed de novo. **Id**.

The written plea agreement contained no provision for the government to file a downward departure. Porter assured the court that no promises, other than what was contained in the written

9

agreement, were made to him. The government's statements do not indicate that it was bound to file a § 5K1.1 motion. Thus, the government's conduct in not moving for a § 5K1.1 departure is consistent with the parties' reasonable understanding of the agreement. There was no breach.

Porter raises his district court argument that he received ineffective assistance of counsel, but states for the first time on appeal that his lawyer was ineffective because he did not present and discuss the PSR with him. He questions whether his lawyer even looked at the PSR, but acknowledges that he has no way of knowing. Porter further argues for the first time on appeal that his lawyer was ineffective for not objecting to the court's sentence of 60 months when the Guidelines called for less and for not objecting to the PSR. He adds that his lawyer was ineffective for advising him to waive his Fifth Amendment right to be indicted by a grand jury which would have revealed the fact that "the conspiracy began in June as well as the bases [sic] of the negotiations".

As noted above, this Court will not address issues not considered by the district court. "[I]ssues raised for the first time on appeal are not reviewable by this court unless they involve purely legal questions and failure to consider them would result in manifest injustice." **Varnado**, 920 F.2d at 321. These issues are not purely legal. See **United States v. Faubion**, 19 F.3d 226, 228 (5th Cir. 1994) (ineffective assistance is a mixed question of law and fact). Thus, this Court will not consider them for the first time on appeal.

10

Porter raises his district-court arguments that his sentence would have been different had counsel been more diligent in his investigation. In his reply brief, Porter expounds on this allegation, asserting that if his lawyer had investigated the circumstances of the case, he would have discovered the affirmative defense that one cannot conspire with a government informant or that a buyer-seller relationship does not constitute a conspiracy. Porter also argues that his lawyer was ineffective for "failing to secure the plea agreement in regards of both substantial assistance and guideline versus statutory application, and for failing to file any pretrial motions that may have aided in his defense's remaining arguments". Construing his pleadings broadly, Porter raised these allegations in rebuttal to the government's answer to his complaint.

This Court reviews conclusions regarding mixed questions of fact and law such as ineffective-assistance-of-counsel claims de novo. **Faubion**, 19 F.3d at 228. The district court's factual findings are reviewed for clear error.

To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced his defense. **Strickland v. Washington**, 466 U.S. 668, 689-94 (1984). To show **Strickland** prejudice, a defendant must demonstrate that counsel's errors were so serious as to "render[] the result of the trial unreliable or the proceeding fundamentally unfair".

11

**Lockhart v. Fretwell**, 113 S. Ct. 838, 844 (1993).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  **Id**. at 844.  In evaluating such claims, the court indulges in "a strong presumption" that counsel's representation fell "within the wide range of reasonable professional competence, or that, under the circumstances, the challenged action `might be considered sound trial strategy'".  **Bridge v. Lynaugh**, 838 F.2d 770, 773 (5th Cir. 1988) (citation omitted).  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's perspective at the time."  **Strickland**, 466 U.S. at 689.  A failure to establish either deficient performance or prejudice defeats the claim.  **Id**. at 697.

The two-part **Strickland** test applies to guilty pleas in which ineffective assistance of counsel is alleged.  **Hill v. Lockhart**, 474 U.S. 52, 59 (1985).  To satisfy the prejudice requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial".  **Id**. at 60.

The district court determined that Porter's counsel was not ineffective for failing to assert the defense that one cannot conspire with a government informant.  Although Porter is correct in asserting that a confidential informant or government agent could not be a coconspirator, and a conspiracy cannot exist between

12

a defendant and a confidential informant or a government agent, <u>see</u> **United States v. Manotas-Mejia**, 824 F.2d 360, 365 (5th Cir.), <u>cert. denied</u>, 484 U.S. 957 (1987), as noted by the district court, the factual basis established that the charged conspiratorial conduct occurred before the coconspirator began cooperating with the government, not after. Thus, Porter fails to establish that his counsel was deficient for not asserting this defense.

The district court determined that because Porter was not entitled to a downward departure, this ground of ineffective assistance was meritless. As discussed above, Porter was not so entitled. Therefore, counsel was not deficient in this regard.

The district court noted that counsel was not deficient for failing to file pretrial motions because the case did not follow the standard procedures associated with formal indictment. Porter has not stated what motions should have been filed or what information was forfeited as a result of the failure to file the motions. Consequently, he cannot establish prejudice. <u>See</u> **Lockhart**, 113 S. Ct. at 844.

Porter has filed a motion to proceed IFP in this Court. The motion is denied as moot inasmuch as the district court granted Porter's motion to proceed IFP on appeal.

Porter filed a motion to expedite appeal arguing that, unless his appeal is expedited, he might have served the amount of time he should have been sentenced to. This Court grants such motions only

13

for "good cause shown".  5th Cir. R. 27.5.  Inasmuch as Porter has failed to show good cause, this motion is denied.

**AFFIRMED**